[Civ. No. 18518.   Second Dist., Div. Two.   Nov. 6, 1951.]

DOROTHY M. CHAFFEE, Appellant, v. ALICE V. SORENSEN et al., Respondents.

Button & Herzog for Appellant.

Snyder & Fletcher, Owen E. O'Neil for Respondents.

WILSON, J.—This is an action to quiet title to real property and to cancel a deed executed by plaintiff's deceased husband to his daughter, defendant Alice V. Sorenson, and for other relief. From an adverse judgment plaintiff has appealed.

Plaintiff and Ira Chaffee were married on October 11, 1944, when she was 59 years of age and Chaffee 74. The latter had three children by his first marriage—the two daughters who are named as defendants and a son. Chaffee was possessed of separate property valued at about $100,000. In April, 1946, Chaffee purchased with his separate funds the property which is the subject of this action and took title in himself and plaintiff as joint tenants. Marital difficulties arose in March, 1947. About March 13 Chaffee asked his daughter Alice to take him to an attorney; she first suggested an attorney known to her father but he did not accept the suggestion; he spoke of Mr. Fletcher, who had been Alice's attorney for several years, and at his request she accompanied him to Mr. Fletcher's office. Plaintiff also engaged an attorney and negotiations were commenced between the two attorneys looking to a divorce and a property settlement agreement. On March 24, 1947, at Chaffee's request, Alice again took him to the attorney's office. Chaffee told his attorney the home place was in joint tenancy and he wanted to "fix it" so plaintiff would not get it; he wanted anyone to have the place except his wife. His attorney told him he could not deprive her of her vested half interest in the joint tenancy property and in order to break the joint tenancy it would be necessary for

him to make a conveyance of his interest. He was further advised that to prevent plaintiff from getting any of his estate at his death he should make a will. When asked to whom he wanted to convey the property Chaffee said, "Give it to Alice."

At Chaffee's direction the attorney prepared a deed from Chaffee to Alice which was dated March 24, 1947. As it lay on the desk Chaffee signed it and upon completion of his signature he said "There!" The attorney took Chaffee's acknowledgment to the deed, signed the notarial certificate and placed it in Chaffee's file. Alice Sorensen never had possession of the deed; it was kept in the attorney's office. Chaffee and wife continued to occupy the property until they separated on August 5, 1947.

On May 21, 1947, Chaffee's attorney prepared a property settlement agreement in which it was recited that the property in question was vested in Chaffee and wife as joint tenants, and sent a letter to plaintiff's attorney stating that when the grant deed he enclosed with the letter was executed and returned he would send Mrs. Chaffee's attorney a check for $5,500. The value of the joint tenancy property was estimated at $11,000.

The property settlement agreement was not signed and negotiations for a settlement failed. Chaffee and his attorney had some slight difficulty and on October 8, 1947, Chaffee requested his papers, having consulted with another attorney. The papers were delivered to Chaffee by the attorney's secretary. The deed, which had remained in the file, was delivered with the other papers.

Shortly after the separation on August 5, 1947, plaintiff brought an action against Chaffee for separate maintenance. He filed a verified answer and cross-complaint in which he stated he owned the property. He testified to the same effect at the hearing of the motion for temporary alimony and again on the trial of the action. Alice was present in court and heard her father's testimony but did not inform the court or anyone else that he had conveyed the property to her. The divorce was granted in October, 1948. In November, 1948, Chaffee returned to Mr. Fletcher and engaged the latter to oppose incompetency proceedings brought against him by his son. He was adjudicated incompetent and at his request Alice was appointed his guardian. She continued to employ Mr. Fletcher to act for her. As guardian she paid for a new roof on the house and took credit for the cost in her guardianship account.

Chaffee died on January 31, 1949. On January 28, while Alice and her attorney were examining papers in Chaffee's desk preparatory to filing an inventory in the guardianship proceedings they found the deed in question. Noting that it did not bear the recordation stamp they had it placed of record immediately. Alice was appointed executrix of her father's will and as such paid taxes on the property out of the estate funds. Such payments were not credited to her account as executrix; it was understood that such disbursements would be charged to the three heirs since she declared she did not want the property herself but intended to share it with her brother and sister.

Plaintiff's sole point is that the evidence is insufficient to sustain the finding that the deed in question was delivered. She opens her argument with the concession of the rule in such cases: ''That disregarding all evidence favorable to appellant, if there is evidence to support the respondent the court is without power to reverse the judgment.''

Section 1626 of the Civil Code provides: ''A contract in writing takes effect upon its delivery to the party in whose favor it is made, or to his agent.'' Section 1933 of the Code of Civil Procedure reads: ''The execution of an instrument is the subscribing and delivering it, with or without affixing a seal.'' In *Williams* v. *Kidd*, 170 Cal. 631, 638 [151 P. 1, Ann.Cas. 1916E 703], the court said: ''It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title, and the true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended thereby to divest himself of title. If he did, there was an effective delivery of the deed. If not, there was no delivery. The solution of this question is grounded entirely on the intention of the grantor, and this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question.''

█ Delivery or nondelivery of a deed is a question of fact to be determined by the surrounding circumstances of the transaction and where there is substantial evidence or where an inference or presumption may be drawn from the evidence to sustain the court's finding of delivery such finding will not be interfered with on appeal. █ The evidence that Chaffee was having marital trouble, asked to be taken to an attorney, sought advice as to how to prevent his wife

from getting his property, his statement "Give it to Alice," the acknowledgment of the deed, his exclamation "There!" after he had signed it, leaving it with the attorney who he knew had been Alice's attorney for many years, clearly indicate his intent to deliver the deed. There is no evidence that Chaffee left the deed with the attorney to be delivered and become effective at his death, or that he intended Alice to hold the property in trust for him, and there are no such inferences. It was a final act upon his part with which he expressed his emphatic satisfaction upon completing his signature. His intent to deprive his wife of any of his property is further demonstrated by his executing his will, whereby his entire estate, which was all separate property, was bequeathed to his three children. All these facts make it manifest that he had no other intention than to divest himself of title and to vest title irrevocably in Alice.     The operation of the deed to transfer title was not affected by its nonrecordation.     The recording of an instrument gives notice to the world of the transfer but does not add to its efficacy as a complete conveyance of title.

    Plaintiff contends that possession of the deed by Chaffee raises a presumption of its nondelivery. Such presumption may be overcome by evidence and has been overcome in the instant case. Possession of the deed by the grantor is explained by evidence which the court accepted and upon which its findings were based. When Chaffee went to Mr. Fletcher's office and asked for his papers he was engaged in a divorce action and the parties and their attorneys were negotiating a property settlement agreement. When he changed attorneys the papers the new attorney desired and needed were those relating to the divorce action and the property settlement agreement, and those were no doubt the only papers in Chaffee's mind. He did not ask for the deed, and the attorney's secretary inadvertently handed him the entire file in which the deed reposed. He had not had any difficulty with his daughter Alice and had no reason to request possession of the deed. If he had expressly requested it the legal situation would not be altered.     Redelivery of a deed to the grantor does not amount to a reconveyance of title (*Robert* v. *Abbott*, 48 Cal.App. 779, 782 [192 P. 345]) even though it is delivered with the intent that the grantor cancel it. (*Lawton* v. *Gordon*, 34 Cal. 36, 38 [91 Am.Dec. 670].) Furthermore, for several months before he became

incompetent Chaffee had had possession of the file of his papers which included the deed. Had it not been his intention to convey title to his daughter he could have manifested the absence of such intent during those months by destroying the deed. Even though such act would have been legally ineffective to reclaim title in him he might have made a layman's attempt but did not do so.

The facts stressed by plaintiff that an escrow was not opened, a title insurance report or a title insurance policy was not ordered, and no consideration was paid, do not affect delivery since none of such acts was necessary to a consummation of the transfer. Inasmuch as Chaffee was making a gift of his interest in the property to his daughter we do not expect to find the presence of the same formalities as if it had been a transaction in which one person was selling property to another for a cash consideration.

Plaintiff contends that Chaffee's nonintent to deliver the deed is shown by the facts (1) that in the proposed property settlement agreement reference was made to the property as joint tenancy property of the parties and (2) that Chaffee testified in the divorce action that the property belonged to him. These contentions are without merit. (1) Mr. Fletcher testified that in preparing the property settlement agreement he had inadvertently referred to the property as being owned by the parties in joint tenancy instead of as tenants in common. The court evidently accepted this testimony as being true. (2) At the time of the trial of the divorce action on October 26, 1948, Chaffee was 78 years of age. He was adjudicated an incompetent in November, 1948. His deed to Alice had been executed a year and a half previously. Due to his age and mental condition the execution of the deed had gone from his memory. This is evidenced by his testimony at the trial that the property belonged to him and his wife had no interest in it. Having forgotten that he had placed the title in joint tenancy it is reasonable to assume he had likewise forgotten the execution of the deed to Alice which was made for the purpose of breaking the joint tenancy.

Plaintiff also comments that during the trial of the divorce action when the joint tenancy was under discussion Alice did not inform the court that she held a deed to the property. It was not incumbent upon her to rise in court and proclaim her title of which she could not be deprived either by agreement between Chaffee and his wife or by a decree divorcing them since she was not a party to the action.

Plaintiff says Chaffee may have meant any one of several things by his expression "There!" after he had signed the deed. The trial court has drawn its inference from such expression and from the evidence of all the surrounding circumstances leading to the signing of the deed and the expressed desire of the grantor. The inference drawn by the court is that Chaffee thought he had done all that was necessary to transfer title to Alice, and his exclamation was one of exulting satisfaction not only that he had given the property to his daughter but that he had deprived his wife of her right to succeed to a half interest therein upon his death.

The payment of taxes, insurance, and repairs on the property by Chaffee in his lifetime and by the executrix of his will after his decease are merely circumstances to be weighed and that were weighed by the trial court against other evidence in the case and particularly the affirmative evidence of delivery given by Alice and Mr. Fletcher, the only persons present when the deed was signed, acknowledged and delivered. Such facts did no more than raise a conflict of evidence on the vital issue of the sufficiency of the delivery of the deed to pass title, and the trial court having resolved that conflict its finding will not be disturbed by this court. (*Blackledge* v. *McIntosh,* 85 Cal.App. 475, 480-1 [259 P. 770].) Likewise, the reference during the trial of the divorce action and in the property settlement agreement to the joint tenancy does no more than create a conflict which has been resolved by the trial court. There need be no formal transfer or manual tradition of a deed from grantor to grantee. It is clear that the thought uppermost in Chaffee's mind was the passing of an undivided one-half interest in the property so that his wife would not obtain title to the whole property at his death by her right of survivorship. When the attorney asked to whom the title should be transferred Chaffee said "give it to Alice." When he signed and acknowledged the deed and said "There!" he indicated that he thought he had done all that was necessary to complete the transfer. His delivery of the deed to Mr. Fletcher, who to his knowledge was also Alice's attorney, without any direction or restriction, indicated as the court found that he intended to divest himself of title completely and sustains the finding that the deed was delivered.

The burden of proof rested upon plaintiff to prove every element of her case including the alleged nondelivery of the deed. Having failed to sustain the burden which the law casts upon her, and the court having resolved the conflicts,

if any, in the evidence and upon the evidence and reasonable inferences drawn therefrom having rendered judgment against her, she cannot prevail on this appeal.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.