[Civ. No. 15309.   First Dist., Div. Two.   May 7, 1953.]

MARY OWENS, as Administratrix, etc., Respondent, v. GRACE LYNETTE RING, as Administratrix, etc., Appellant.

Ray E. Montrose and Simeon E. Sheffey for Appellant.

Lillian M. Wollitz for Respondent.

GOODELL, J.—Plaintiff sued to quiet title to real property and from a judgment in her favor this appeal was taken.

The property is on Putnam Street in Oakland, with a frontage of 37½ feet and a depth of 105 feet. It was acquired in 1921 by Elizabeth Rudell, who occupied it as her home until she died on October 8, 1946. A week after her death a gift deed dated and acknowledged on June 8, 1940, was recorded, purporting to transfer the title from her to David Ring and William Ring, her nephews. This litigation turns on the question whether it was ever delivered.

The evidence indicates that at the time of Mrs. Rudell's death the deed was in her possession. A few days after her death it was found in her home and taken therefrom by David Ring, one of the grantees named therein, and promptly recorded. The original deed was introduced in evidence by the defense, and in the footnote will be found a description of it.*

The court found: "That there was never a valid delivery of the alleged deed of June 8, 1940, from Elizabeth Rudell to David Ring and William T. Ring or to either of them, or to any other person in their behalf, during the lifetime of said grantor, or at all, within the contemplation of law." And further: "That at the time of her death Elizabeth Rudell, plaintiff's intestate, was the owner and in possession, and entitled to the possession" of the property.

Appellant contends that the evidence is insufficient to sustain these findings.

A few days after Mrs. Rudell's funeral respondent Mary Owens, Agnes Ring and Margaret Smith, Mrs. Rudell's sisters,

---

*The deed in question is on one of Hardy's printed deed of gift forms. The description of the property is typewritten. The name "Alameda" (County) is written in pencil. The rest of the deed is filled in by ink handwriting which, according to the defendant Grace Ring, William's widow, was the writing of Mrs. Rudell. In the space for the name of the party of the first part appears the name "Elizabeth Rudell" and in the space for the names of the parties of the second part appear the names "David Ring Jr and William Ring Jr, Nephews of the Party of the First Part." Beneath the name "Elizabeth Rudell" was written, apparently at a different time and in different ink, the names "David Ring Jr and William Ring Jr" with ink lines drawn through them, and beneath the names "David Ring Jr and William Ring Jr Nephews of the Party of the First Part" was written, apparently at a different time and in different ink, the name "Elizabeth Rudell" with ink lines drawn through it—in short, a transposition of the names of grantors and grantees. It would appear, however, judging by the alignment of the writing with relation to the printed form, that the deed was originally filled out with Elizabeth Rudell as the party of the first part and David and William of the second, and this is borne out by the habendum clause filled out in the plural number (i.e. parties and "their" heirs) and by the concluding clause, filled out in the singular number (i.e. "In Witness Whereof the said party of the first part has hereunto set her hand" etc.).

and David Ring, William Ring and Carlon Smith, her nephews, went to the decedent's home, the property in question, to "straighten things out" and search for a will. No will was found, but in the course of the search the deed was found by David Ring in a purse in the china closet off the dining room. He put it in his pocket and he and his mother and brother returned to their home in San Francisco where he showed it to his mother and then turned it over to his brother. It was then recorded at the request of the grantees.

At the time of the trial both grantees had died, David in 1947 and William in 1950.

The only evidence on which appellant can rely with respect to delivery is found in the testimony of Mrs. Agnes Ring and Mrs. Grace Ring, in addition to the prima facie proof arising from recordation. Agnes Ring testified that one day she received the deed through the mail unaccompanied by any letter and without any instructions as to what should be done with it. She placed it in a glass receptacle in her home where she kept the dishes, and there it remained for several months until Mrs. Rudell requested its return. It was returned to her at once. Mrs. Ring was not certain as to the time, but testified it was before her son William married, which was in 1943. She testified that while the deed was in her possession she showed it to David and William both of whom had it in hand while examining it.

Mrs. Agnes Ring testified: "Q. You had it in your home after she made it out? A. And she changed her mind and sent for it and I mailed it back to her. Q. But she had given it to your son, David, before she died, hadn't she? A. No, she mailed it over to me. Q. And after she mailed it over to you, she mailed it over to you for the boys? A. Yes, I remember so well showing it to the boys. We laughed about it. We didn't believe it at all. I said, 'What will I do with this paper?' And they said, 'Oh, put it in that cup and keep it,' and I was glad I did when she wrote and wanted it back. . . . Q. And while you had it, you showed it to David and to Will, did you not? A. Oh, yes. Q. And David had had it in his hands, hadn't he? A. Yes. Q. And so did Will? A. Yes, that is how I remember, when I showed it to the boys. Q. When the deed came over? A. Yes. Q. And you were very grateful to Mrs. Rudell, for making out the deed to the two boys? A. I didn't believe it then. . . . Q. When the deed came to you, did you hand it to David or to William? A. Oh, I can't remember. I just showed it to both of them. Q. How

do you mean you showed it to them? They just took it and looked at it? A. Yes. Q. But they didn't keep it in their possession? A. No. They just felt as I did, they couldn't believe it, and they just said, 'Oh, put it in there and save it.' Q. And then she wrote, several months after, you say, wanting the deed back? A. Yes." When asked: "What did your sister say to you about the property?" she answered: "When she wanted the deed back she said in the letter she thought her sisters should have it, and there was nothing more said about it when I saw her again."

Appellant moved to strike this answer but the court refused to do so, remarking "It does go to the intent," having theretofore remarked that "intent is the paramount element of delivery." In this colloquy this was said: "Mr. Sheffey: What happened after the delivery couldn't affect the deed. It is incompetent, irrelevant and immaterial. The Court: What we are trying to establish is whether there was ever a delivery. Mr. Sheffey: That is established by this witness's testimony. The Court: The action of the grantor in relation to the deed certainly would show whether or not there was delivery or whether or not there was conditional delivery. Mr. Sheffey: That may be so, at the time of the delivery, Your Honor; but it wouldn't be so several months after. The Court: You are assuming the time of delivery is established. That is the question at issue—was there delivery or not delivery. Therefore, the manner in which this deed was treated by the grantor would certainly indicate what her intent was, and the Court is quite in the dark as to why the deed was mailed to Mrs. Ring. It was not mailed to the grantee. It was not mailed with instructions. That is the record as it now stands."

Appellant testified that in 1945 her husband, William, showed her the deed in the Ring home in San Francisco, where they lived with his mother, and her counsel point out that that was before the grantor's death. They claim that this testimony was uncontradicted, but this is not so, since Agnes Ring testified that it was before William's marriage in 1943 that the deed was in her possession in the home, where it remained for only a few months and was then mailed back to Mrs. Rudell. Obviously either witness could have been mistaken as to the year, and the trial court could have accepted either version. █ Even if Grace Ring's testimony was uncontradicted by direct testimony the court was not bound to accept it (*Blankman* v. *Vallejo,* 15 Cal. 638, 645; *Lohman*

v. *Lohman,* 29 Cal.2d 144, 149 [173 P.2d 657] ; *Berg* v. *Journeymen's etc. Union,* 5 Cal.App.2d 582, 584 [42 P.2d 1091].)

Appellant argues that after the episode when Agnes Ring had the deed in her possession for a few months in 1943 or before that, and returned it to Mrs. Rudell, it might have been again sent back by Mrs. Rudell to San Francisco, but Agnes Ring testified emphatically that the deed was in her home on but one occasion prior to the time when her sons brought it back after their visit to Mrs. Rudell's home in Oakland following her death.

Grace Ring testified that after her husband's death she found the recorded deed in his desk, but the testimony respecting the finding of the deed in the grantor's home after her death, from which there is a presumption of nondelivery (*Donahue* v. *Sweeney,* 171 Cal. 388, 390 [153 P. 708]) and its removal therefrom by David Ring, afforded a sufficient explanation of the way it happened to be put on record and how it came into William Ring's possession *after* the grantor's death, and sufficed to dispel any prima facie showing or presumption of delivery arising from recordation.

There was evidence other than the testimony of Agnes Ring and Mary Owens on which the court could have based its finding of nondelivery. As was the case in *Donahue* v. *Sweeney, supra,* the grantor exercised acts of dominion over the property after the date of the deed, which were inconsistent with a divestiture of her title.

First, Mrs. Rudell lived in the house, in sole possession thereof, continuously until her death, which was over six years after the date of the deed, during which time the record title was vested in her. It is true that appellant alleged that there had been an oral agreement between Mrs. Rudell and David and William Ring that she had the right to remain and live on the property as long as she lived, but there was no proof of any such agreement.

Secondly, on April 1, 1943, Mrs. Rudell and her husband (who predeceased her) joined in executing a deed of trust on the property to secure a promissory note for $2,100.

There is a presumption "That a person is the owner of property from exercising acts of ownership over it, or from common reputation of his ownership" (Code Civ. Proc., § 1963, subd. 12). Continued possession by the grantor and the encumbrance of the property by her are such acts (see, again, *Donahue* v. *Sweeney, supra,* at p. 391).

As the trial judge remarked, "intent is the paramount element of delivery" and, as said in *Williams* v. *Kidd*, 170 Cal. 631, 639 [151 P. 1, Ann.Cas. 1916E 703], "this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence." That question having been resolved by the trial court against the appellant, its finding "cannot be set aside by this court on the ground that it is not sustained by the evidence" (*Mah See* v. *North American etc. Co.*, 190 Cal. 421, 426 [213 P. 42, 26 A.L.R. 123]). See, also, *Hamilton* v. *Pacific Elec. Ry. Co.*, 12 Cal.2d 598, 602-603 [86 P.2d 829]; *Webster* v. *Board of Dental Examiners*, 17 Cal.2d 534, 539-540 [110 P.2d 992]; *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].

The cases just cited answer appellant's argument that this court should draw its own inferences from the facts.

In *Neely* v. *Buster*, 50 Cal.App. 695 [195 P. 736], cited by appellant, the trial court found that there had been a good delivery to a third person without right of recall before the grantor's death; here the trial court found the contrary. In the Neely case all the appellate court held was that there was sufficient evidence to support the finding of delivery. There is nothing in *Chaffee* v. *Sorensen*, 107 Cal.App.2d 284 [236 P.2d 851], cited by appellant, in conflict with the rule stated in the four cases cited above.

Appellant claims that this action is barred by plaintiff's laches.

The demurrer first raised that issue, but we are satisfied that the face of the complaint does not show such a case, and hence that the demurrer was properly overruled. The complaint contains the averments usually found in a quiet title action. It is true it alleged the death of William Ring on January 14, 1950, three months before the complaint was filed, but that is not sufficient to show laches.

The answer set up the defense of "laches and inequitable conduct of plaintiff and those whom plaintiff allegedly represents." It alleges the deed; that David died on June 25, 1948 [meaning 1947] and that his estate had been distributed to his mother, Agnes Ring. It alleges William's death on January 14, 1950, and that his estate was in course of probate. It alleges an oral agreement between Elizabeth Rudell and David and William reserving a life estate (which, as already noted, was not proved). It then alleges: "that at the death of said Elizabeth Rudell, William T. Ring, and David

Ring took possession of said property under and by virtue of said deed and since said date have paid all taxes levied and assessed against said property, have kept said property insured and have paid insurance premiums thereon for such insurance, have maintained said property in a state of repair, and have expended substantial sums of money in the maintenance, repair and upkeep of said property, and have paid and discharged an indebtedness of Elizabeth Rudell, secured by a deed of trust on said real property," in the sum of $1,724.36. It alleges further: "That all the above facts were known to plaintiff and those whom she represents at all times since the date of the death of said Elizabeth Rudell, but said plaintiff and those whom she allegedly represents have made or asserted no claim to said property until after the death of all the parties connected with said deed and the circumstances under which the same was delivered to William Ring and David Ring."

There was no proof whatever of the possession of the property by David or William, or of the payment by them of taxes or insurance, or of their maintenance or repair of the property.

Under examination by respondent's counsel, appellant was asked: "You alleged in the answer to the complaint, that certain payments were made on a deed of trust covering this property; that these payments were made by David and William Ring, did you not?" to which she made no audible answer; the record shows "A. (Nodding head)." This question did not inquire whether such payments had been *in fact* made, but simply whether she had so alleged. This was not followed up by proof by appellant of such payment or by proof of any other outlays.

While it is true both David and William had died before this action was commenced, the defense was not thereby deprived of the means of proving possession as alleged in the answer. The same may be said with respect to payments and outlays for taxes, insurance, maintenance and repairs, and the alleged payment of $1,724.36 on the indebtedness.

The court found generally: "That all of the allegations and averments of plaintiff's complaint are true and *all of the denials of defendant's answer and all of the allegations and averments of said answer inconsistent with plaintiff's complaint are untrue.*" (Emphasis added.) And specifically: "That it is not true that plaintiff's cause of action is barred by laches or inequitable conduct."

■ In view of appellant's failure to prove the allegations of her special defense, the findings just quoted cannot be successfully attacked since it is settled that where no evidence is introduced in support of an issue findings should be made thereon against the party who has the burden of proof (24 Cal.Jur. p. 945). ■ The question of laches is primarily one for the trial court. (*Hopson* v. *National Union etc. Co.*, 116 Cal.App.2d 320, 325-326 [253 P.2d 833]; 10 Cal.Jur. p. 527.)

There is no need to discuss the numerous authorities cited by both sides on the question whether laches can be pleaded as a defense in this type of action, in view of appellant's failure to prove the allegations of her defense of laches.

■ Appellant claim error in the admission of certain hearsay testimony. Mrs. Owens testified that as she waited in the dining room of the Rudell home in Oakland, David went into a closet adjoining the dining room and "He came out with a paper and the search was ended. It was all over. . . . Q. And he took the paper and put it in his pocket? A. Yes." The following then occurred: "*Q. What did he do? A. He put it in his pocket and he said, 'The search is over.'* Mr. Sheffey: Just a moment. I ask that the statement of the witness that was made by David Ring, as she asserts, be stricken out, as hearsay. The Court: Wait just a minute, please. I don't think it is hearsay. He is a party in interest. However, no proper foundation has been laid. Mr. Sheffey: I also object on the ground of no proper foundation. Miss Wollitz: I think we can come back to that, Your Honor, and tie it in." (Emphasis added.)

The part of the testimony which we have emphasized is claimed to be hearsay. The court ruled that it was not, but went on to rule that no proper foundation had been laid, which from the colloquy just quoted, brought the matter to an end in any event, since plaintiff's counsel abandoned the inquiry. With the record in that condition it cannot be said that "this testimony undoubtedly influenced the court in making its decision."

Appellant also assigns as error the testimony of the witness Melvin Gross respecting a conversation he had with Mrs. Rudell in May, 1945, about the deed. Counsel say that such conversation "had no bearing on the intent of the grantor in 1940 when she mailed the deed to Agnes Ring. It did not contradict the testimony of Grace Lynette Ring nor refute the presumption of delivery arising from the fact of possession

of the deed by the grantees." ■ Respondent answers by citing the cases of *Casey* v. *Casey,* 97 Cal.App.2d 875, 880 [218 P.2d 842] ; *O'Dea* v. *Hibernia S. & L. Society,* 119 Cal. App. 622 [7 P.2d 318], and *Katz* v. *Enos,* 68 Cal.App.2d 266, 275-276 [156 P.2d 461], (see, also, *Whitlow* v. *Durst,* 20 Cal.2d 523 [127 P.2d 530] and *Hansen* v. *Bear Film Co.,* 28 Cal.2d 154 [168 P.2d 946]) all of which hold that statements of a grantor made after the date of execution, as well as before, are admissible on the question of intent.

We find no error in this record.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 2, 1953.