[Civ. No. 19119.   First Dist., Div. One.   Dec. 12, 1960.]

MARIE CONDENCIA, Respondent, v. LAURA J. NELSON, Appellant.

Edward A. Friend and Rodric L. Robinson for Appellant.

William Steinberg and Abraham Berry for Respondent.

TOBRINER, J.—This case involves the question as to which of two deeds, one a tenancy in common and the other in joint tenancy, both executed by appellant in 1921, should prevail. The trial court apparently concluded that appellant's continued possession of the tenancy in common deed raised a presumption of nondelivery and that her vague and confused deposition, the only evidence in the case upon the point, did not rebut the presumption. Certain reasonable inferences, which the court drew from the facts, supported the presumption. Finally, the court found untrue appellant's allegations as to fraud and mistake. As we shall point out, appellant proffers no basis upon which we should reverse the judgment.

We narrate the history of the two deeds, the symbols of a family struggle over the right to four-fifths of a piece of property on Union Street, San Francisco. Appellant, 76 years old and blind since childhood, resides, as does her respondent daughter, in the apartment building on the contested realty. In April of 1921, appellant, then sole owner of the property, executed a deed conveying, as tenants in common, four-fifths of the interest in the property to her four sisters, all of whom are now deceased. This deed was not recorded until 1958 after it was found in appellant's possession. Appellant executed a second deed in July 1921, conveying, as joint tenants, the same portion of the property to the four sisters. This deed was recorded in 1921.

The court admitted into evidence photostatic copies of the two deeds, of the family tree and of a chain of title. This last document showed that one sister died in 1934 leaving a son; another died in 1957 leaving two heirs. The other two sisters also died in 1957. The last surviving sister gave the property under will to respondent. Respondent introduced no evidence except the photostats of the family tree and the joint tenancy deed.

Appellant's case rests upon the assertions of her deposition which describe the events of 1921 when appellant conveyed a four-fifths interest in the property to her sisters. Appellant states that she had signed two papers at her sisters' request, that they had returned the first to her, saying, "it was no good to me" but that she had kept it; that she intended at the time to "do what was right," and "if those children . . . were entitled to it, it was all right"; that her sisters had told her the second paper was "just like" the first one. Following the reading of the deposition into evidence, the court noted that the heirs of the sisters, if they had challenged the joint tenancy deed, would have been barred by their mothers' acts.

The court found untrue the allegations of the appellant (1) that the fraudulent misrepresentations of her sisters had induced appellant's execution of the deed in joint tenancy; (2) that appellant had executed the deed in joint tenancy under the mistaken belief that it was exactly the same as the deed in tenancy in common; and (3) that the tenancy in common deed had been delivered to the sisters, thus leaving nothing further for appellant to convey. Denying appellant the relief sought by her cross-complaint, the court concluded that appellant owned one-fifth and respondent four-fifths of the property and entered judgment in partition accordingly.

We address ourselves to the questions, first, whether the court could correctly conclude that the tenancy in common deed was not delivered, and, second, whether appellant was the victim of fraud or mistake.

As to the first issue we are constrained not to set aside the judgment if nondelivery of the tenancy in common deed is sustained by presumption and inference. As the court states in *Chaffee* v. *Sorensen* (1951), 107 Cal.App. 2d 284, 288 [236 P.2d 851]: "Delivery or nondelivery of a deed is a question of fact to be determined by the surrounding circumstances of the transaction and where there is substantial evidence or *where an inference or presumption may be drawn from the evidence to sustain the court's finding of delivery* such finding will not be interfered with on appeal." (Emphasis added.) The precept is repeated in *Owens* v. *Ring* (1953), 117 Cal.App.2d 672, 678 [256 P.2d 1040]: "As the trial judge remarked, 'intent is the paramount element of delivery' and, as said in *Williams* v. *Kidd*, 170 Cal. 631, 639 [151 P. 1, Ann.Cas. 1916E 703], 'this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence.' That question

having been resolved by the trial court against the appellant, its finding 'cannot be set aside by this court on the ground that it is not sustained by the evidence' . . . ." As we shall point out, we believe both presumption and inference "may be drawn from the evidence to sustain the court's finding" (*Chaffee* v. *Sorensen, supra,* 107 Cal.App.2d 284, 288) that in the instant case the second, and not the first, deed was delivered and "such finding will not be interfered with on appeal" (*idem*).

Since the tenancy in common deed apparently remained in the possession of the grantor, the presumption arises that the deed was not delivered. The court's finding against appellant's allegation that, "On April 29, 1921, defendant executed a deed conveying . . . said property . . . to her sisters" in "tenancy in common" rests upon the nondelivery of the tenancy in common deed, and that nondelivery, in turn, finds support in the presumption.

As *Donahue* v. *Sweeney* (1915), 171 Cal. 388 [153 P. 708], states: "The deed was found in the possession of the grantor. This fact supports a presumption that it was never delivered." (P. 390.) To the same effect: *Hill* v. *Donnelly* (1941), 43 Cal. App.2d 47, 49 [110 P.2d 135]; *Chaffee* v. *Sorensen, supra,* 107 Cal.App.2d 284, 289; 2 Witkin, Summary of California Law, page 910. The Supreme Court describes the basis for the presumption in *Miller* v. *Jansen* (1943), 21 Cal.2d 473, 477-478 [132 P.2d 801]: "But possession by the grantor has been uniformly held to make out a case of nondelivery, unless actual delivery be shown and that the grantor's possession was merely for safekeeping or similar purpose."

Appellant's exercise of dominion over the property, after the execution of the first deed, is incompatible with its delivery. Thus the court in *Owens* v. *Ring, supra,* 117 Cal. App.2d 672, alluding to the fact that the grantor, after the date of the deed in question, joined her husband in executing a deed of trust on the property, holds: ". . . the grantor exercised acts of dominion over the property after the date of the deed, which were inconsistent with a divestiture of her title." (P. 677.) In our case, as in the cited one, the grantor exercised such dominion; she executed a second deed to dispose of the four-fifths interest; such action exhibits an intent to control, and dispose of, an interest in the property, which is "inconsistent with a divestiture of her title." (*idem.*) Appellant's emphasis upon the question of the kind of interest the grantor conveyed, to defeat the perti-

nence of the citations, obscures the central point, the ruling of the cases that continued dominion of the grantor over the property reinforces the presumption flowing from continued possession of the first deed.

Appellant seeks to meet the contention as to the presumption, thus substantiated by continued dominion over the property, with a refutation of the cited cases and reliance upon the deposition.

As to the cases, appellant claims they are not in point because they "involve the question of whether or not the grantor intended to part with title at all" whereas, here, "it is clear beyond any doubt that the grantor intended to part with a four-fifths interest" and the "question, rather, is what kind of interest she intended to convey, the quantum of the interest being clear." While, it is true, the cited precedents dealt with whole titles and here we pass upon a four-fifths fraction of one, the crucial question in both situations turns upon whether the grantor's continued possession of the instrument raises the presumption of nondelivery.

The presumption did not fall because of appellant's statements in the deposition. Although the deposition constituted the sole evidence before the court as to the history of the execution of the deeds, no compulsion forced the court to accept appellant's vague statements as true; the court could properly conclude that the testimony lacked sufficient clarity and persuasiveness to overcome the presumption. (*Davis* v. *Judson* (1910), 159 Cal. 121, 128 [113 P. 147]; *Spaulding* v. *Jones* (1953), 117 Cal.App.2d 541, 554 [256 P.2d 637]; *Turman* v. *Ellison* (1918), 37 Cal.App. 204, 209 [174 P. 396]; Witkin, California Evidence, § 479, p. 535.)

The fabric of the deposition is torn by a number of instances of inconsistencies. These are perfectly understandable in view of the blindness of the deponent, her age of 76 years, the lapse of some 37 years between the time of these events and the date of the deposition. Studies in psychology demonstrate the difficulty of recollection of events far less separated than these in time between their occurrence and the witness' account. (Morgan, "Psychology of Memory," 8 American Journal of Criminal Law & Criminology; Stevens, Ed., Handbook of Experimental Psychology (1951), pp. 1229, 1231, 1235.) Thus serious discrepancies and vacuity occur in the deposition, typified by the following sequences. When the witness was asked, "did your sisters ask you to put your mark on a piece of paper which they told you was a deed," she first

answered, "A deed? No, they never—to deed the property to me?" Again asked, "To deed part of the property to them," she replied, "No, there was no deed at all—no deed at all. I never signed any paper as a deed, and they never gave me any deed." She further testified: "Well, I told to Mr. Robinson that I had made—well, a promise if the—I thought that my sisters I could depend on them, that at their death that each one of the children, the heirs, should get their portion of the property." Upon being questioned as to her "understanding" of what her sisters were doing and what they "promised" her "that they were doing," she said, "They didn't promise me anything at all. They didn't say a word to me. They just took it upon themselves between the four, but not with me."

Since no supervening showing replaced the sheltering evidentiary structure of the presumption, the trial court could properly accept its coverage. Moreover, the facts afford a reasonable basis for two inferences which support the presumption that the deed was not delivered.

First, while the fact of the recordation of the joint tenancy deed effects no binding consequence upon these litigants, who were parties to both deeds, it does give some substance to the theory of nondelivery of the tenancy in common deed. If the latter had been delivered there is no reason to believe that the sisters would not have treated it in the same manner in which they handled the joint tenancy deed. They promptly recorded the joint tenancy deed in 1921. The other deed was not recorded until 1958, after the death of the sisters, when Ruth Durkin, who would inherit under the tenancy in common deed, recorded it.

Second, if the sisters had received the tenancy in common deed, they could have executed among themselves a joint tenancy deed, without even involving appellant. Nondelivery of the tenancy in common deed would explain the failure to proceed in this fashion. A reasonable inference of nondelivery thus arises to support the court's conclusion.

The trial court's finding, then, on the issue of delivery is supported by both inference and presumption. ▉▉ Turning, now, to the second issue, we see no reason to upset the trial court's finding rejecting appellant's affirmative defense that the sisters defrauded her in obtaining the joint tenancy deed.

In the first place, even assuming the sisters misled appellant as to the nature of the interest granted to them, appellant

neither gained nor lost by the transaction. Her own interest remained untouched and inviolate. The decisions cited by appellant involve situations in which the defrauded party suffered a deprivation (*Sullivan* v. *Dunnigan* (1959), 171 Cal.App.2d 662 [341 P.2d 404]; *Steiner* v. *Steiner* (1958), 160 Cal.App.2d 665 [325 P.2d 109]; *Faulkner* v. *Beatty* (1958), 161 Cal.App.2d 547 [327 P.2d 41]); that necessary predicate is absent here.

In the second place, while the blindness of appellant, coupled with the sibling relationship, may have imposed a confidential relationship and shifted the burden to the grantees to dispel any showing of fraud (*Sparks* v. *Mendoza* (1948), 83 Cal.App.2d 511, 514 [189 P.2d 43]; *Bacon* v. *Soule* (1912), 19 Cal.App. 428, 434 [126 P. 384]), the trial court could have disbelieved appellant's assertions on this issue or have concluded that appellant's sisters gained no undue advantage by acquiring a joint tenancy deed rather than a tenancy in common deed. As of the date of execution, when the sisters were all living, the substitution of one form of tenancy for the other could hardly work a "fraud" on the consenting sisters or the complying appellant.

The disposition of appellant's argument as to mistake parallels that of the contention as to fraud. We find no basis to disturb the trial court's ruling. Appellant's cited case of *Tyler* v. *Larson* (1951), 106 Cal.App.2d 317 [235 P.2d 39], involved an appellate court's affirmance, upon the record, of the trial court's finding of mistake; here, we have the opposite finding; the case does not advance appellant's position. Furthermore, in view of the above positions, we do not consider respondent's arguments as to laches.

We conclude that in the battle of the two deeds, the one which the court found to have been delivered must prevail. The trial court is the arbiter of this question of fact; we see no reason for us to usurp that function; no salient issues arise here to defeat its judgment.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied January 9, 1961, and appellant's petition for a hearing by the Supreme Court was denied February 8, 1961.