[Civ. No. 26326. First Dist., Div. Three. Oct. 21, 1970.]

MAXINE G. WILLIAMS, Plaintiff and Respondent, v.
RAYMOND H. WILLIAMS, Defendant and Appellant.

## COUNSEL

Cowan, Henze, Morken & Stone, Cowan & Henze and Maurice S. Marcus for Defendant and Appellant.

Condon, Dolgin, Kully & Jameson and Howard Jameson for Plaintiff and Respondent.

## OPINION

**BROWN (H. C.), J.**—The husband appeals solely from that portion of an interlocutory judgment and decree of divorce which adjudged that a promissory note secured by a mortgage on certain real property was wife's separate property.

The respondent wife was formerly married to Donald Rodan, which marriage was terminated by a decree of divorce in the State of Iowa. The Rodan divorce decree awarded certain real property in the State of Iowa consisting of a parcel of land used as a trailer court to the wife.

The wife thereafter in August of 1956 married appellant, Williams. The trailer court and real property were conceded to be the wife's separate property at the time of this marriage. In 1963 the trailer court was sold to

a Mr. and Mrs. Prost. A part of the purchase price was evidenced by a promissory note in the sum of $66,000. The note was secured by a mortgage on the property and was made payable to appellant and respondent, i.e., to Maxine G. Williams and Raymond H. Williams, husband and wife, as joint tenants with right of survivorship.

On July 17, 1964, in the State of Nebraska, the respondent obtained a decree of divorce from the appellant. A property settlement agreement executed by appellant and respondent was introduced into evidence which provided that the Iowa trailer court property was to be awarded to respondent wife.

In October of 1964 the parties apparently reconciled and stipulated that the Nebraska decree of divorce be dismissed. Pursuant to this stipulation the divorce was set aside and "held for naught" by the Nebraska court.

Appellant and respondent then came to California and, although they were married at this time, the parties remarried in California. After one and one-half years, differences again arose resulting in a divorce in California. The award by the California court to the wife of the promissory note secured by the mortgage of the trailer court in Iowa is claimed by appellant to be in error.

The court found: ". . . that at all times subsequent to the entry of the property settlement agreement both parties treated the proceeds of the note as the separate property of plaintiff [respondent] and that the property settlement agreement of 1964 in the State of Nebraska was fully executed." The court then concluded that the promissory note was the separate property of respondent.

It is conceded that the note and mortgage at the time appellant and respondent were married were proceeds of the sale of respondent's separate real property. It is also conceded that respondent directed her attorney in Iowa at the time she sold her real property to make the note and mortgage payable to both herself and her husband.

The first question presented is: What is the effect of a dismissal of a Nebraska divorce upon a property settlement agreement entered into incidental thereto?

In the record before us there is contained a copy of an order from the District Court of Sarpy County, Nebraska, setting aside the divorce decree. The California trial court's finding that the Nebraska decree was, in fact, dismissed is fully supported by the evidence. Thus, when the parties left Nebraska, a marriage between them was in existence which continued until its dissolution by our trial court in the present action.

■ Under Nebraska law, a decree of divorce is not final until six months have elapsed after the trial and decision. Furthermore, the District Court of Nebraska (its trial court) is empowered to entertain a motion to vacate or modify a divorce decree within that six-month period. (Revised Statutes of Nebraska, 1943 (reissue of volume 3, 1968) § 42-340, p. 1122.) The decision to vacate a divorce decree rendered within the past six months rests with the sound discretion of the trial court. (*Hubbard* v. *Hubbard* (1964) 176 Neb. 768, 771 [127 N.W.2d 503, 505].) Thus, there is no doubt as to the validity of the order declaring the purported divorce of the parties to be set aside and "held for naught." It seems clear that the parties were in fact never divorced in Nebraska and their status before the trial court below should be looked at from the view that they were legally married at the time they left Nebraska for California on August 11, 1956, and the alleged "remarriage" in California on October 30, 1964, is of no consequence in these proceedings.

■ The consequence of vacating the Nebraska divorce decree by the Nebraska court is also quite clear relative to its effect upon the property settlement agreement which conveyed full interest in the promissory note to respondent. It is well settled in Nebraska that if, after entering into a valid separation agreement, the parties reconcile and re-establish their marriage, the said agreement is rendered invalid and cannot be regarded as determinative of the rights of the parties in a subsequent divorce. (*Chambers* v. *Chambers* (1952) 155 Neb. 160, 164 [51 N.W.2d 310, 313]; 5 Moore, Nebraska Practice (1966) § 4052, p. 548.) In the absence of a valid divorce, a separation agreement between a husband and wife is abrogated by the renewal of the marriage relationship. (*Dillon* v. *Dillon* (1919) 103 Neb. 322, 324 [171 N.W. 917].) Since the parties entered into a stipulation that their divorce decree should be set aside and, in fact, the court did set aside the divorce, it follows that the property settlement agreement which was a part of the Nebraska divorce also was rendered a nullity.

To summarize, under Nebraska law the parties were still legally married when they moved to California, and their property settlement agreement entered into in contemplation of securing a divorce in Nebraska was nullified when the divorce decree was vacated. Such being the situation, the status of the promissory note was the same as it was prior to obtaining the Nebraska divorce and entering into the now nullified property settlement agreement. Thus, the note, on its face at least, was the joint property of the parties when coming before the courts of this state to obtain a divorce.

The real question to be answered is whether respondent intended to make a gift to her husband, the appellant, of an interest in her separate property.

Civil Code section 164 provides: ". . . that when any . . . property is acquired by husband and wife by an instrument in which they are described as husband and wife, unless a different intention is expressed in the instrument, the presumption is that such property is the community property of said husband and wife. . . ."

In *Baron* v. *Baron* (1970) 9 Cal.App.3d 933, 939 [84 Cal.Rptr. 404], the court said: "The presumption required by Civil Code section 164 is a rebuttable one [citations] affecting the burden of proof (Evid. Code, § 605) and its effect 'is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact.' (Evid. Code, § 606.) 'Burden of proof' is defined (Evid. Code, § 115) to mean 'the obligation of a party to establish by evidence a requisite decree of belief concerning a fact in the mind of the trier of fact or the court. The burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or non-existence of a fact by a preponderance of the evidence, by clear and con-vincing proof, or by proof beyond a reasonable doubt.' (Also see: Evid. Code, § 190.) This definition is for use by the trial court to guide it in weighing the evidence and resolving the issues. Its significance to an appel-late court is limited. (3 Witkin, Cal. Procedure (1954) 2246-2247, 'Appeal' § 84(2).) An appellate court cannot reweigh the evidence and, until the con-trary is established, must assume the trial court followed the appropriate rule regarding burden of proof in resolving the issues.

"Since a presumption no longer is evidence in California (Evid. Code, § 600) we must examine the record to ascertain if any substantial evidence (Evid. Code, § 140) supports the finding of the trial court, governed by these rules: ' "In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable infer-ences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." . . . The rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict.' *Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689]."

It is well settled that parol evidence is admissible to establish the absence of an intention to make a gift of either separate or community property, although the instrument of conveyance is made by either spouse

to the other or from a third person to both at the direction of the owner. This is true even in the absence of a showing of fraud, mistake or undue influence. (See *Huber* v. *Huber* (1946) 27 Cal.2d 784, 788 [167 P.2d 708], citing cases.)

We recognize that an undisclosed and secret intention of wife not to make a gift to her husband of one-half of the promissory note cannot be established by parol evidence. (*Watson* v. *Peyton* (1937) 10 Cal.2d 156 [73 P.2d 906].) But here respondent wife explains the placing of her husband's name on the note.

Respondent testified: "At the time this note was drawn up, the attorney asked me whose names this should be made out to, and I said Mr. and Mrs. Ray Williams. He said are you aware of the fact that it is in your name only. And with no thought—I am not a cold maliced calculating person—it was old time habit of being Mrs. Ray Williams that I said Mr. and Mrs. Ray Williams. It was with no purpose in mind whatsoever. I knew in my heart the way this property had been derived by. I know as all of you know this is my—"

She also testified that all of the monthly payments on the note came to her; that she purchased a beauty parlor business with $3,000 which was derived from the payments on the note, and that she was not aware that title would be changed by placing appellant's name on the note. She further testified that from the time of the Nebraska decree up to the date of her remarriage to the appellant in October of 1964, and at all times subsequent thereto, that she considered the Iowa note and mortgage to be her separate property. The testimony of wife was corroborated by the manner in which they treated the note and the installment payments. All during the 10 years of their married life the installments were received by wife, and she was the only one who exercised dominion and control of those proceeds.

In *DeBoer* v. *DeBoer* (1952) 111 Cal.App.2d 500, 506 [244 P.2d 953], the court stated: "Where title is taken in the name of the wife the testimony of the husband that he did not intend to make a gift of his separate property or of his interest in the community property, if believed by the court, is sufficient to overcome the presumption that the property is the separate property of the wife . . ."

The intent to pass title to the note and deed of trust is the paramount element, and it is a question of fact to be determined by the trial court. (*Condencia* v. *Nelson* (1960) 187 Cal.App.2d 300, 302 [9 Cal.Rptr. 759]; *Estate of Pieper* (1964) 224 Cal.App.2d 670, 684-685 [37 Cal.Rptr. 46].)

The court here heard the evidence of intent, as testified by the parties, and considered that evidence with their actions concerning the pay-

ments. This was conflicting evidence, but the trial court resolved the conflicts in favor of wife. We believe the evidence that title to the note and its proceeds remained as the separate property of the wife was sufficient to overcome the presumption that the wife intended it as a gift.

In the early case of *Davis* v. *Smith* (1852) 2 Cal. 423, the court said: "The evidence is conflicting and might have warranted a verdict on either side. It is in such cases not the province of the Court to disturb the finding. It is presumed that the  . . . Court had good reasons for giving more credence to the witness of the successful party." This is the law today. (See *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].)

The judgment is affirmed.

Draper, P. J., and Caldecott, J., concurred.

A petition for a rehearing was denied November 20, 1970.