[Civ. No. 45072. Second Dist., Div. Four. June 30, 1975.]

In re the Marriage of RUTH MAY and BYRON HENRY FRAPWELL.
RUTH MAY FRAPWELL, Appellant, v.
JAMES P. GILLESPIE, as Executor, etc., Respondent.

598

**COUNSEL**

Clendening & Murray and James D. Murray for Appellant.

John A. MacDowell for Respondent.

**OPINION**

**KINGSLEY, Acting P. J.**—The wife appeals from portions of an interlocutory decree of dissolution determining the status, as community or separate property, of certain assets standing either in joint tenancy or in the name of the wife. For the reasons set forth below, we reverse the portions of the decree appealed from.

The husband and wife were in their late fifties at the time of their marriage. The parties met in September 1972, and within a week the husband proposed marriage and the wife, the appellant herein, accepted. The wife moved from her home into the home of the husband. Between September 1972 and the date of separation, the husband caused property to be purchased in his wife's name, alone, or caused his property to be transferred into joint tenancy. Irreconcilable differences arose and this action followed.

A trial was had and the court, pursuant to the wife's request, ordered findings of fact and conclusions of law. The court awarded the wife a checking account at the Bank of America, Norwalk Branch, one of the savings accounts at Great Western Savings, Lakewood Branch (which had been held in joint tenancy by petitioner and her son), the household furnishings, a four-karat diamond ring gift, and the reimbursement of $836.25. The court found that a 1972 Oldsmobile was the sole and ,eparate property of the husband; the real property was the separate property of the husband; a checking account at the Imperial Branch, Bank of America; two savings accounts at Great Western Savings & Loan Association, Lakewood Branch, were the separate property of the husband, and 375 shares of stock of Lucky Stores also were the separate property of the husband. The wife has appealed; we reverse.[1]

I

■ The appellant wife first alleges that the husband made a gift of the automobile to her. There is much evidence to support that theory. The wife testified that the husband said it was a gift; the registration slip, the contract of purchase and the insurance were put in her name, alone, by the husband, and the salesman at the car agency testified that the husband had said the car was a gift for his wife. Nevertheless, there was some evidence to the contrary. The down payment came from the joint checking account of the parties, and both the husband and wife testified that the automobile was put in her name in order that public liability insurance would be available. ■ Parol evidence is admissible to establish the absence of an intent to make a gift of either the separate or community property (*Williams* v. *Williams* (1970) 12 Cal.App.3d 172 [90 Cal.Rptr. 457]), and the issue of whether there was an intent to pass title

---

[1]The husband died during the pendency of the appeal which has been prosecuted, in his name, as respondent, by his executor. Pursuant to rule 48(a), California Rules of Court, we have substituted the executor as party respondent in this case.

ordinarily is a question of fact. (*Huber* v. *Huber* (1946) 27 Cal.2d 784, 788 [167 P.2d 708].)

However, even though the spouses' intent is controlling and the husband's testimony that he did not intend to make a gift may be evidence of such intent (see *DeBoer* v. *DeBoer* (1952) 111 Cal.App.2d 500 [244 P.2d 953]), the husband's testimony as to the source of the funds or his testimony of his undisclosed intention not to make a gift of a present interest cannot, alone, negative the express terms of the instrument. (See *Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202 [259 P.2d 656].) The fact that the wife herein knew that one reason the car was put in her name was to obtain liability insurance, was not sufficient to show that husband's intent not to make a gift was disclosed to the wife. Since the record is lacking in evidence that there was "a common understanding or agreement" that the transaction was not what it seemed to be—to wit a gift—the court erred in awarding the automobile to husband. Thus, there must be not only evidence of a proper source of funds but also of a communicated intent, in order to avoid the implications from the form of the title.

## II

Appellant wife alleges that the two Great Western Savings & Loan Association accounts were joint tenancy property and not the property of the husband. The funds originally came from two savings accounts which were the separate property of the husband prior to his meeting appellant but, in 1972, the husband placed the two accounts in his name and in the name of the wife as joint tenants. The husband testified that, although he put the two savings accounts into joint tenancy, he did so only to avoid probate, and no gift was intended by him prior to his death.

Whether evidence is sufficient to overcome the inferences arising from a joint tenancy deed to husband and wife is a question of fact; the form of the instrument is not conclusive and parol evidence is admissible to establish absence of intention to make a gift. (*Gudelj* v. *Gudelj* (1953) *supra,* 41 Cal.2d at p. 204; see also *Cash* v. *Cash* (1952) 110 Cal.App.2d 534 [243 P.2d 115].) While it has been said that husband's intention is controlling (see *DeBoer* v. *DeBoer* (1952) *supra,* 111 Cal.App.2d 500), and the husband did testify that he had no intent to make a gift, still, "[t]he presumption created by the deed cannot be overcome by testimony of the hidden intentions of one of the parties, but only by evidence tending to prove a common understanding or an agreement

that the character of the property was to be other than joint tenancy." (*Machado* v. *Machado* (1962) 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55].)

The wife relies on certain testimony of the husband that he didn't remember precisely what he told his wife when he made the transfer.[2] The wife herself testified that the husband told her he was putting money in her name to avoid probate.[3] However, as with the car, the fact that the husband had a reason other than pure affection for placing property in the wife's name does not, in and of itself, rebut a donative intention. Many transfers are made between husband and wife to avoid probate or to minimize taxes, but still with a donative intent. In fact, absent that intent, many estate plans involving inter-spousal transfers would fail to achieve their objectives.

### III

The same reasoning applies to the 375 shares of stock in Lucky Stores, Inc. Although the wife may have known of the intent to avoid probate, the record does not show that a lack of donative intent was ever disclosed to her.

### IV

Wife argues that awarding the Bank of America checking account to the husband was error. The husband testified that he added the wife's

---

[2] The testimony is as follows:

"Q. Now, you've also testified that you were making certain gifts such as the bank accounts at Great Western and so on, and this was supposed to avoid probate.

"A. I never said I was making gifts. I wasn't making any gifts.

"Q. Did you ever tell anyone prior to today that the transfers were revocable by you?

"A. Well, I never told anybody about the transfers of the bank account or the stock.

"Q. Well, you *kept that thought to yourself*, did you not? You didn't tell Mrs. Frapwell, did you?

"A. Well, I told her when we changed it over, certainly.

"Q. What did you tell her precisely?

"A. I don't remember. *In case that anything happened to me that she could cash it in.*

"Q. But you didn't tell her that there was some contingency that you were sometime in the future going to change it back to your own name?

"A. No, and I didn't tell her I gave it to her, either.

"Q. But you did in fact *put these items in her name*?

"A. Yes, I did."

[3] "Q. But it's your testimony that he put this money in your name and he told you that he wanted to avoid probate, is that correct?

"A. Right.

"Q. Is that a correct statement?

"A. That is one of them. It was a fringe benefit."

name to the account so "she could make out the bills."[4] However, we find no evidence that the husband disclosed to his wife that this was his sole intention, and so wife's contention that husband cannot rely on an undisclosed intention again is well taken.

## V

Wife alleges that the trial court committed error in making final disposition of the property in the interlocutory judgment. The cases relied on[5] ante-date the adoption of the Family Law Act in 1969. Under section 4800 of the Civil Code, division in the interlocutory decree is proper. The contention is without merit.

The portions of the judgment (interlocutory decree of dissolution) appealed from are reversed.

Dunn, J., and Cole, J.,* concurred.

---

[4]The account was used to pay bills.

[5]*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 214 [259 P.2d 656]; *Dowd* v. *Dowd* (1952) 111 Cal.App.2d 760, 765 [245 P.2d 339].

*Assigned by the Chairman of the Judicial Council.