[Nos. A077708, A081291. First Dist., Div. Three. Nov. 30, 1998.]

THOMAS TUSHER et al., Plaintiffs and Appellants, v.
DONLON GABRIELSEN et al., Defendants and Respondents.

**COUNSEL**

Hoffman, Finney & Klinedinst, William P. Hoffman, Jr., Malcolm E. McLorg, Legal Strategies Group and Robert J. Vizas for Plaintiffs and Appellants.

Ephraim Margolin and Arthur Brunwasser for Defendants and Respondents.

OPINION

**WALKER, J.**—In these consolidated appeals we review the trial court's order dissolving a preliminary injunction which had prohibited respondents Donlon and Agnes Gabrielsen (the Gabrielsens) from destroying a pond located principally on their property, to which appellants Thomas and Pauline Tusher (the Tushers) unsuccessfully claimed an implied view easement and littoral or riparian rights (appeal No. A077708, the first appeal). We also review the trial court's judgment in favor of the Gabrielsens on the Tushers' breach of contract claim (appeal No. A081291, the second appeal). We affirm.

## Facts and Procedural History[1]

The Gabrielsens and the Tushers own adjoining properties in the Town of Ross. Both parcels were at one time owned by the Gabrielsens who, in 1963, divided the property into two parcels. The Gabrielsens retained one parcel with a house on it for themselves and built a "spec" house on the second parcel. In conjunction with construction of the house on the second parcel, the Gabrielsens reconfigured an irregularly shaped man-made pond that straddled both parcels by changing its shape to an oval and reducing its size, intending that it would be located only on their property.[2] In 1963, the Gabrielsens sold the second parcel with the newly built spec house to James and Lola Gosline which the Tushers, in turn, purchased in 1976.

When the Goslines purchased the property the house's interior was not completed and the grounds had not been landscaped. At the time the Tushers purchased the property, it had been fully landscaped by the Goslines who had oriented the view from the house toward the pond. During the years the Gabrielsens owned their property the pond held varying amounts of water, sometimes being full, other times almost empty.[3] In 1980 when the pond was no longer able to hold water, the Tushers asked the Gabrielsens whether they intended to repair it. The Gabrielsens responded that they did not and also turned down the Tushers' request to purchase the pond. The Tushers then asked whether they could repair and maintain the pond. The Gabrielsens agreed, and the neighbors entered into an "Agreement Between Neighbors"

---

[1]This section provides an overview of the facts and history of the case. We provide additional detail as relevant in our specific discussion of the issues.

[2]Several years later the Gabrielsens discovered that less than 1 percent of the pond actually lay on the Tushers' property.

[3]As we explain more fully later, the many details dwelled upon by the parties regarding when the pond held water and when it did not, whether the Gabrielsens tried to fix the pond or not, and whether the Gabrielsens liked the pond or not, are not relevant to the issues on appeal. Accordingly, we do not repeat them here.

(the pond agreement) detailing a revocable license in the Tushers to repair, maintain and use the pond for 15 years.

In July 1996, six months before the end of the fifteen-year term, the Gabrielsens terminated the pond agreement in accordance with its terms and took steps to obtain approval from the Town of Ross to fill in the pond and provide for an alternate drainage plan. The Tushers responded by filing this action seeking a temporary restraining order and preliminary and permanent injunctions to bar the Gabrielsens from removing the rubber liner installed by the Tushers or otherwise altering the pond's physical characteristics. On July 26, 1996, the trial court issued the Tushers' requested temporary restraining order and an order to show cause regarding preliminary injunction. At the Gabrielsens' request, the temporary restraining order was made mutual on August 14, 1996. After hearing on August 16, 1996, the court granted the Tushers' motion for preliminary injunction, fixing bond at $35,000.[4]

Thereafter, during February 1997, the Tushers' amended complaint for injunction, declaratory relief and breach of contract was tried by the court sitting without a jury. The Tushers called their own witnesses and presented evidence, including a visit to the site by the court. The Tushers also called the Gabrielsens as adverse witnesses pursuant to Evidence Code section 776. In addition, the Gabrielsens called several witnesses out of order, during the Tushers' presentation of their evidence. Upon the conclusion of the Tushers' case, counsel for the Gabrielsens made a motion for judgment pursuant to Code of Civil Procedure[5] section 631.8.[6] The court entertained argument by both sides and granted the motion as to all causes of action. One week later, on February 27, 1997, the court dissolved its previously issued temporary restraining order and order granting preliminary injunction.[7] The order lifting the injunction was stayed to allow the Tushers time to appeal. They

---

[4]It appears from the record that no preliminary injunction order was ever presented to the court for signature, though a cash undertaking was posted. The parties proceeded to trial on the permanent injunction, apparently unaware that a preliminary injunction had never been signed.

[5]Unless otherwise specified, all further statutory references will be to the Code of Civil Procedure.

[6]Section 631.8 provides in part as follows: "(a) After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision as provided in Sections 632 and 634, or may decline to render any judgment until the close of all the evidence."

[7]These did not terminate by operation of law because a judgment could not be entered until trial on the Gabrielsens' cross-complaint for breach of contract.

filed their first appeal from the order dissolving the temporary restraining order and order granting preliminary injunction, which they followed with a petition for writ of supersedeas to preserve the injunction pending determination of the appeal. We granted the petition on April 30, 1997, staying the court's order of February 27, 1997. Judgment was not entered until October 14, 1997, after the completion of the trial on the Gabrielsens' cross-complaint for breach of contract.[8] The Tushers' second appeal is from the entry of judgment on the entire action.

## Discussion

### A. Contentions on First Appeal

In the first appeal the Tushers contend: 1) that the trial court improperly relied upon "incompetent and irrelevant" evidence of the Gabrielsens' intent with regard to the pond's status. They insist that cleansed of this assertedly erroneous finding of intent, the court's statement of decision compels the conclusion that they possess an implied easement in the pond; 2) that the trial court imposed an elevated burden of proof upon them, and did not, upon the Tushers' prima facie showing, shift the burden of proof to the Gabrielsens as they claim is required by law; 3) that the trial court failed to rule on the claim that they possessed an implied easement because the pond was identified on subdivision maps recorded by the Gabrielsens in 1963; 4) that the trial court's denial of their claim to riparian and littoral water rights in the pond was not supported by substantial evidence and was erroneous as a matter of law; 5) and that the denial of an easement was not supported by substantial evidence.

### 1) Statement of Decision and Standard of Review

We first address the parties' procedural arguments regarding the propriety and validity of the trial court's statement of decision, because these questions virtually permeate (and in many cases obfuscate) the remaining issues briefed. We are called upon to decide what weight, if any, to give to the statement. ■ Appellants contend that the statement of decision, which consists of the verbatim transcript of the court's comments when ruling on the Gabrielsens' motion for judgment, is valid as a statement of decision and we must consider it as indicative of the trial court's reasoning, which they urge is flawed. The Gabrielsens, for their part, claim that the document is not a statement of decision, and that we must presume the correctness of the trial

---

[8]The trial court found for the Tushers on the cross-complaint. That portion of the judgment is not a subject of this appeal.

court's decision without according the comments in the purported statement of decision any elevated significance.[9]

For several distinct reasons, we conclude that the document entitled "statement of decision" is of no particular help to the Tushers. We hold, first, that a statement of decision was not timely requested as required by sections 631.8[10] and 632 and was therefore waived.[11] (*Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 793-794 [218 Cal.Rptr. 39, 705 P.2d 362].) Accordingly, we must assume that the trial court made whatever findings are necessary to sustain the judgment and we indulge all presumptions in favor of the order. (*Ibid.*; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227] (*Arceneaux*).) As we discuss presently, the record does not overcome these presumptions; rather, it supports them with substantial evidence.

Second, even if the statement of decision is considered valid and timely, we deem the Tushers to have waived the right to assert the alleged deficiencies. Under section 634, a party must raise any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party. (*Arceneaux, supra,* 51 Cal.3d at p. 1134.) The Tushers insist this rule does not apply because they prepared the statement of decision to the trial judge's exact specifications, so that objecting would have been futile. The record belies the claim. In response to the Tushers' untimely request for a statement of decision, the trial judge stated: "In terms of your request for a statement of decision, the court made extensive findings at the time of issuing its decision, and, should either party desire a written statement of decision, I suggest that one be prepared consistent with the findings made in open court." The Tushers then prepared the document they now complain about, which merely incorporated the verbatim transcript of the court's decision.

---

[9]The parties' positions on the statement of decision are both "moving targets." The positions as we restate them hold true throughout most of the briefing, but sometimes switch to the other side.

[10]Appellants claim that a statement of decision is required after the trial court grants a motion for judgment under section 631.8. It is clear, however, that no statement is required unless timely requested by a party. (§ 632; *Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 304 [131 Cal.Rptr. 547]; *Elzey* v. *Metropolitan Builders, Inc.* (1971) 16 Cal.App.3d 71, 73 [92 Cal.Rptr. 461].)

[11]By written order, a court may extend any time provided by California Rules of Court, rule 232, and may, at any time prior to the entry of judgment, excuse noncompliance with any time limit, "for good cause shown and on such terms as may be just." (Cal. Rules of Court, rule 232(g).) Here, although the trial judge signed a document entitled statement of decision several months after granting the Gabrielsens' section 631.8 motion, she never entered a written order extending the time to request a statement of decision, nor considered good cause or just terms.

We disagree that the judge's instructions mandated this form. Rather, she left the parties to prepare a *proper* statement of decision consistent with her findings and consistent with section 632. Moreover, even if the judge had specifically directed the preparation of the document with which the Tushers now find fault, they were required to inform the court of their objections. "[I]t would be unfair to allow counsel to lull the trial court and opposing counsel into believing the statement of decision was acceptable, and thereafter to take advantage of an error on appeal although it could have been corrected at trial. . . ." (51 Cal.3d at p. 1138.)

Finally, even if we accept the statement of decision as valid and proper, and use it to understand the trial court's reasoning in resolving the disputed issues, we hold that it supports the order dissolving the preliminary injunction. The principal controverted issues to be decided by the trial court were whether the Tushers possessed an easement or littoral or riparian rights in the pond. As we discuss in more detail below, the trial court made findings which support its conclusion and ruling in favor of the Gabrielsens, and which are supported by substantial evidence in the record.

2) *The Easement*

a) *Findings and Evidence*

█ An easement will be implied when, at the time of conveyance of property, the following conditions exist: 1) the owner of property conveys or transfers a portion of that property to another; 2) the owner's prior existing use of the property was of a nature that the parties must have intended or believed that the use would continue; meaning that the existing use must either have been known to the grantor and the grantee, or have been so obviously and apparently permanent that the parties should have known of the use; and 3) the easement is reasonably necessary to the use and benefit of the quasi-dominant tenement.[12] (5 Miller & Starr, Cal. Real Estate (2d ed. 1989) §§ 15:21-15:23, pp. 455-459.) "The purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by all the facts and circumstances." (*Fristoe* v. *Drapeau* (1950) 35 Cal.2d 5, 8 [215 P.2d 729].) An easement by implication will not be found absent clear

---

[12]These elements have been codified in Civil Code section 1104 which provides: "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed."

evidence that it was intended by the parties. (*Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 21 [147 Cal.Rptr. 655].)[13]

 In her comments to the parties when granting the Gabrielsens' motion for judgment, which were later transformed into the statement of decision, the trial judge concluded that there was no implied easement in the pond. The Tushers take exception to the conclusion, claiming that the court's factual findings do not support it. Specifically, they contend that although the court found in their favor on each implied easement component, it concluded, nonetheless, that the Gabrielsens had not intended one to be created. They assert that the trial court's decision improperly rested upon testimony concerning the Gabrielsens' "subjective" intent not to create an easement, rather than on their intent as gleaned from the surrounding facts and circumstances. We read the findings differently.

The statement of decision[14] makes the following relevant easement findings in support of the ruling: "[F]rom the Gabrielsens' standpoint, their position is, has been quite clear, this is our property. We own it. We have the right to do what we want to with it." "[Q]uite clearly, the pond is on the Gabrielsens' property. And they did not think of the pond as an amenity. *Quite clearly intended to move the pond, that used to be on that part of the parcel, all on to their property in 1963.* And it looked to me like *their intent was to clearly make the pond on their property and so there wouldn't be any ambiguity* with the—with a huge body of water that would have spanned two properties. [¶] And according . . . to the Gabrielsens, they did not consider the pond an amenity, they both considered it to be an eyesore." (Italics added.)

The judge also commented on the loveliness of the pond, and how, as asserted by the Tushers, it appeared to be a part of the Tushers' property, and added value to the property. But she concluded that these appearances did not overcome the evidence of the Gabrielsens' intent *not* to create an easement. Contrary to the Tushers' contention, the statement of decision does not suggest that the judge relied on the Gabrielsens' testimony regarding some secret, never disclosed, "subjective" intent regarding the pond. Rather, she considered the Gabrielsens' *conduct* in 1963 when they reconfigured the pond so it would be entirely on their own property, as indicative

---

[13] As we discuss below, the need for "clear" evidence of intent does not create a "clear and convincing" standard of proof.

[14] This was obviously a very emotional case for the parties. In an apparent attempt to soften her ruling against the Tushers, the trial judge issued, essentially, an apologia for her decision. This has ultimately served as grist for the appeal, and has confused the issues presented. While we are sympathetic to the difficulty of deciding some cases, we urge trial courts to do so clearly. Attempting to soften the blow with extra verbiage only blurs the reasons for the decision.

of their intent to retain full possession and control of the pond. The judge took into account the facts and circumstances at the time the property was divided and sold to the Goslines, and from these determined the Gabrielsens' intent.

We reiterate that an easement cannot be implied absent clear evidence that one was intended by the parties. (*Walters* v. *Marler, supra,* 83 Cal.App.3d at p. 21.) The record contains substantial evidence from which the trial court could conclude the Gabrielsens did not intend to create an easement. In asserting that the record does not contain substantial evidence, the Tushers do nothing more than reargue their case by citing to evidence in support of their position. It is elementary that we will not engage in a reweighing of the evidence. Furthermore, the bulk of the evidence relied upon by the Tushers is irrelevant to the only pertinent question—based upon the facts and circumstances at the time of the original transfer of the property to the Goslines, what did the Gabrielsens intend? How the Gabrielsens truly felt about the pond thereafter, whether they maintained it, whether they had a grudge against the Tushers, are all completely irrelevant to this crucial issue.[15]

Finally, we address appellants' contention that the trial court failed to consider whether they acquired an implied easement by virtue of subdivision maps prepared by the Gabrielsens and allegedly given to the Goslines.[16] They claim that because the trial court did not specifically address their claim in its statement of decision, we must reverse and remand. As we have explained, the purported statement of decision was not valid and we presume that the trial court made the factual findings necessary to support its ruling, including a finding on the subdivision map issue.[17] (See *Michael U.* v. *Jamie B., supra,* 39 Cal.3d at pp. 792-793.) We uphold the ruling if it is supported by substantial evidence. (*Ibid.*)

 In certain cases, purchasers of subdivided property have been granted implied easements in streets or other common areas depicted on a subdivision map. The rule allowing for such an easement is based on the implied intent of the grantor and upon an estoppel resulting from the buyer's reliance on the map showing the streets or other common areas at the time of purchase. (*Metzger* v. *Bose* (1960) 183 Cal.App.2d 13, 18 [6 Cal.Rptr. 337].)

---

[15]We feel compelled to comment on the outrageous excess indulged in by both sides in briefing this case. It behooves attorneys to rise above their clients' emotional rancor so as to clearly brief relevant issues, rather than inundate the court with reams of irrelevant materials.

[16]The Gabrielsens object that this argument is raised for the first time on appeal. Although they never argued the issue to the trial judge, the Tushers did include the assertion in their trial brief. We consider it.

[17]See footnote 19, *post.*

Therefore, an easement will not be implied in favor of the buyer if other facts and circumstances surrounding the transaction indicate that the grantor did not intend to create an easement, or if there is no reference to a map, or if there is no reliance by the purchaser upon the map. (*Ibid.*; see *Phipps* v. *Western Pacific Dev. Co.* (1922) 60 Cal.App. 171 [212 P. 407].)

■ The trial judge found that the Tushers did not possess an implied easement in the pond. She reached this conclusion by considering all of the facts and circumstances as presented by the parties. The evidence before her included the maps and plans which the Tushers claim showed the pond as an improvement inuring to the subdivided property's benefit. These documents did not sway her opinion as to the parties' intent. Nor should they have. Every single map referred to by appellants showed the pond in its state prior to being reconfigured, with a sizable odd-shaped portion resting on the property being sold. It is undisputed, however, that before the Goslines bought the property the pond had been reconfigured into a neat oval, virtually completely removing it from the property being sold by the Gabrielsens.[18] Thus, even if we accept the Tushers' claim that the Goslines saw the maps (a claim based purely upon surmise) it is unreasonable to infer that they believed they were getting an easement in the pond, or that the Gabrielsens had the intent to give them one. The more rational inference is that the Goslines saw that a pond that had once been a part of their property had been removed, leaving them with no legitimate claim in it and no reasonable basis to rely on its future use. Any impression that the pond was a "public" amenity which the Goslines would have the right to view in perpetuity would have been entirely illogical given all of the facts and circumstances.[19]

b) *Burden of Proof*

■ Appellants assert that, contrary to settled law placing the burden of proof on a party asserting a claim, the burden of proof in this case should have been shifted to the Gabrielsens to prove that they did not intend to create an easement once the Tushers made out a prima facie case. Appellants misapprehend the evidentiary process. As provided by Evidence Code section 500: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to

[18]See footnote 2, *ante.*

[19]The result is no different if we look to the statement of decision to determine the trial court's reasoning in ruling against the Tushers. The recordation or presentation of a subdivision map is but one additional fact or circumstance tending to establish a grantor's intent to create an easement in the public area indicated on the map. The trial court was not required to list each fact and circumstance considered in deciding that the Gabrielsens did not intend to convey an easement.

the claim for relief or defense that he is asserting." Once this initial burden is met, the opposing party will be charged with producing its own evidence as to the matters established. "(a) The burden of producing evidence as to a particular fact is on the party against whom a finding on that fact would be required in the absence of further evidence. [¶] (b) The burden of producing evidence as to a particular fact is initially on the party with the burden of proof as to that fact." (Evid. Code, § 550.) " 'Burden of producing evidence' means the obligation of a party to introduce evidence sufficient to avoid a ruling against him on the issue." (Evid. Code, § 110.) Thus, if a plaintiff presents evidence to establish each element of its case, the defendant has the burden of *going forward* with its own evidence as to those issues. This does not alter the ultimate burden of proof, which rests with the plaintiff to prove each of the relevant facts supporting its cause of action. In the present case, both sides presented evidence on the easement issue. The court was left to weigh the evidence, and found for the Gabrielsens. There was no error in placing on the Tushers the burden of proving their causes of action.

### c) *Standard of Proof*

The Tushers next contend that the trial court's decision was based upon the imposition of an erroneously elevated standard of proof. They claim that the court required them to prove the existence of an implied easement by "clear and convincing" evidence, rather than by the ordinary "preponderance" of the evidence standard imposed on civil complainants. The Gabrielsens do not dispute that the court imposed the elevated standard. They claim that the Tushers were required to prove their case with clear and convincing evidence, and that they failed to do so. We agree with the Tushers that the proper standard of proof to establish an implied easement is by a preponderance of the evidence. (See Evid. Code, § 115 ["Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."].) Nothing in the record indicates the trial court imposed the higher standard; we therefore assume that it applied the proper standard. (*Williams* v. *Williams* (1970) 12 Cal.App.3d 172 [90 Cal.Rptr. 457] [until the contrary is established the appellate court must assume the trial court followed the appropriate rule regarding burden of proof].)

In support of their assertion that the trial court imposed an improper standard, appellants point to the judge's use of the word "clear" in describing the evidence required to establish the Gabrielsens' intent. In her comments and statement of decision, the judge stated: "The law requires that for an easement to be shown it has to be shown clearly." And "[b]ut it has not been proven to me, it has not been proven to me by the standard that is required, that there is an easement. To create an easement it has to be clear."

Appellants ask us to infer, from these comments, that the judge applied a clear and convincing standard when weighing the evidence presented to her. We cannot make that inference based upon this record. First, we note the court's recurrent use of "clear" and "clearly" throughout her comments; the words are repeated nine times in the span of seven and a half pages of transcript. Given the frequent use of the words, it appears more likely to be a habit of speech than an expression of a legal conclusion.

Furthermore, if the use of "clear" and "clearly" do have some legal significance, it is obvious to us from the context of the usage that the trial judge was referring to the *quality* of the evidence she thought was necessary to prove intent, rather than to the quantity or weight of that evidence. Her comments reflect her conclusion that the historical evidence showing the Gabrielsens never intended to create an easement in the pond was clear. She stated: "[F]rom the Gabrielsens' standpoint, their position is, has been quite *clear*, this is our property. We own it. We have the right to do what we want to with it." "[Q]uite *clearly*, the pond is on the Gabrielsens' property. And they did not think of the pond as an amenity. Quite *clearly* intended to move the pond, that used to be on that part of the parcel, all on to their property in 1963. And it looked to me like their intent was to *clearly* make the pond on their property and so there wouldn't be any ambiguity with the—with a huge body of water that would have spanned two properties. [¶] And according . . . to the Gabrielsens, they did not consider the pond an amenity, they both considered it to be an eyesore." (Italics added.)

Thus, if the Tushers were going to tip the scales in their favor, they were going to have to present evidence that *clearly* showed a contrary intent; nothing wishy-washy or uncertain would do. We see nothing in the record to suggest that the trial court applied the "clear and convincing" burden of proof standard. She sought clear evidence of the intent of the parties, which she found in considering the facts and circumstances existing at the time the property was conveyed to the Goslines. (See *Orr* v. *Kirk* (1950) 100 Cal.App.2d 678, 681 [224 P.2d 71], and *Walters* v. *Marler, supra,* 83 Cal.App.3d at p. 21.)

3) *Substantial Evidence to Support Riparian/Littoral Rights Ruling*

▮ Appellants contended in their amended complaint that the Gabrielsens' conduct, if not enjoined, would interfere with their riparian rights in the pond. ▮ A riparian water right provides an owner of property abutting a natural watercourse the right to the reasonable and beneficial use of the water. (*People* v. *Shirokow* (1980) 26 Cal.3d 301, 307 [162 Cal.Rptr. 30, 605 P.2d 859].) A littoral right is a right attaching to land

abutting a natural lake or pond, and accords that land the same status as a riparian right. (See, generally, *City of Los Angeles* v. *Aitken* (1935) 10 Cal.App.2d 460 [52 P.2d 585] and *Crum* v. *Mt. Shasta Power Corp.* (1934) 220 Cal. 295 [30 P.2d 30].)

■ The trial court found that the pond was not a natural watercourse and denied the Tushers' claim to riparian/littoral rights. It stated: "What we know is that—uncontroverted—is that the pond is artificial. We know that the water level has fluctuated over time. Of course there was less water before 1963, because the pond used to be twice as big. That explains some of the differences in the testimony we had in those years before 1963. It did . . . fluctuate with rainfall and rain—and drainage. But it is a manmade pond. It is serviced by a drain pipe. And I cannot find that there is any natural water course. [¶] The way that I see it, there are no riparian rights in this artificial pond. The plaintiffs, understandably, want the pond for its beauty, not for its utility."

Appellants contend that the denial of their riparian and littoral rights is not supported by substantial evidence and is based on erroneous legal conclusions. Primarily, they argue that the watercourse feeding the admittedly manmade pond is not artificial, notwithstanding the undisputed fact that the watercourse consists of three small drain pipes. Ordinarily, riparian rights attach only to a natural watercourse, and not to an artificial channel such as a canal which is used to carry water from a stream. However, under specific circumstances an artificial watercourse may originate in such manner as to give rise to riparian rights; such as where an existing stream is diverted into a new channel, and the artificial channel is permanently substituted for the natural one. (See *Chowchilla Farms Inc.* v. *Martin* (1933) 219 Cal. 1, 18 [25 P.2d 435].)

■ Our Supreme Court has described a natural watercourse this way: "A natural watercourse 'is a channel with defined bed and banks made and habitually used by water passing down as a collected body or stream in those seasons of the year and at those times when the streams in the region are accustomed to flow. . . .' [Citation.] A canyon or ravine through which surface water runoff customarily flows in rainy seasons is a natural watercourse. Alterations to a natural watercourse, such as the construction of conduits or other improvements in the bed of the stream, do not affect its status as a 'natural' watercourse. [Citations.] A natural watercourse includes 'all channels through which, in the existing condition of the country, the water naturally flows,' and may include new channels created in the course of urban development through which waters presently flow. [Citation.] Once surface waters have become part of a stream in a watercourse, they are no longer recognized as surface waters. [Citation.]" (*Locklin* v. *City of Lafayette* (1994) 7 Cal.4th 327, 345 [27 Cal.Rptr.2d 613, 867 P.2d 724].)

 Not surprisingly, each side relies upon the above-quoted language to support its position. The reason is clear: the question is factual in nature. "The question of the existence of a watercourse is often one of fact to be determined by a jury or the court. If the evidence in that regard is conflicting, the determination of the trial court will not be disturbed on appeal." (*Costello* v. *Bowen* (1947) 80 Cal.App.2d 621, 627 [182 P.2d 615].) The trial court was presented with just such evidence. The Gabrielsens presented evidence to show that the pond serves as a detention basin which collects water from three drain pipes measuring eight, twelve and eighteen inches, respectively. The drain pipes are fed from drainage originating in the hills above the Tusher property, from service water and roof water which collects in the Tushers' yard and driveway and are then discharged into the pond, and from water flowing down from streets above the property. Much of this water flows over land and downhill with no well-defined route until it reaches an area adjacent to the Tusher property. According to the Gabrielsens' hydrology expert, the water flows downhill predominantly in sheets of water which is "basically a wide band of runoff, no well-defined channel."

The Tushers, to use their own term, "place a different slant" on the facts. And therein lies their problem. The trial court, as fact finder, placed the slant in the Gabrielsens' favor. As there is substantial evidence to support the finding, we do not disturb it.

## B. *Contentions on Second Appeal*

 In their second appeal the Tushers contend that 1) the trial court's judgment in favor of the Gabrielsens on their breach of contract claim is not supported by substantial evidence, and is incorrect in its conclusion that the cooperation clause in the contract is unenforceable; and 2) we must reverse the judgment because of deficiencies in the statement of decision. We have already fully addressed the arguments regarding the statement of decision and therefore only address those claims relating to the alleged breach of the pond agreement.

On September 15, 1981, the Tushers and the Gabrielsens entered into an "Agreement Between Neighbors" for the purpose of "provid[ing] for repair and maintenance of the pond by Tusher in return for a revocable license to use the pond." The agreement was for a 15-year term, but allowed the Gabrielsens, after the first 3 years, to terminate it at any time in exchange for pro rata repayment to the Tushers of their repair costs. The agreement also contained the following paragraph, entitled "Cooperation": "The parties are cognizant that, because they are neighbors and because disputes between neighbors can be most harmful and bitter, it is extremely important that they

cooperate and try to work out both construction and the continuing exercise and ultimate termination of the use rights. *Both parties agree to cooperate with the other to accomplish this.*" (Italics added.)

In their amended complaint, the Tushers alleged that the cooperation provision required the parties to cooperate "with respect to the termination of the agreement" and that the Gabrielsens had breached this requirement "by failing and refusing to consult with Plaintiffs respecting their plans to drain and fill the Pond, by failing to address with Plaintiffs the means of facilitating the change in drainage necessitated by the planned demolition of the Pond, and by failing to so deal with the termination of the agreement as to minimize damage to the Plaintiffs."

In granting the Gabrielsens' motion for judgment, the trial court found against the Tushers on this cause of action. In its comments on granting the motion, which became the statement of decision, the court stated: "[I]n terms of the pond agreement, what it looks like to me is that *both sides were acting in good faith* to try to resolve it in the way that they thought was the best. [¶] And one side would bristle at a proposal from the other side, but I can't say that there was a breach of the pond agreement." (Italics added.)

The Tushers contend that the ruling is unsupported by the evidence. In a dramatically entitled "The Attack on the Pond" section, they detail the many horrors visited upon the pond by the Gabrielsens *after* they had terminated the pond agreement on July 15, 1996. The Tushers claim that these actions somehow violated the cooperation clause in the pond agreement. They seem to suggest that the clause required the Gabrielsens to provide them with advance notice of their intention to give the required notice to terminate the agreement, and to obtain suggestions from the Tushers on how to terminate the agreement to everyone's satisfaction. The very statement of the claim points up its absurdity. It is undisputed that after the first three years, the pond agreement gave the Gabrielsens the absolute right to terminate the agreement and revoke the Tushers' license to use the pond at any time and for any reason. The Gabrielsens wanted to terminate the agreement; the Tushers did not want them to. What sort of cooperation could have come into play under these circumstances?[20] We can certainly envision ways in which the cooperation clause would have come into play during the agreement's existence, but not for its actual termination or thereafter. Under well-established rules of construction, we must construe the terms of a contract so as to give meaning to every provision. To read into the agreement a requirement for cooperation in termination would render meaningless

---

[20]The trial court seems to have recognized the absurdity of requiring cooperation in the termination of the agreement when it found that both parties had acted in good faith.

the specific and unambiguous provision allowing the Gabrielsens the absolute right to terminate unilaterally and at their discretion. We affirm the trial court's finding that there was no breach.

## C. *Motion for Sanctions*

The Gabrielsens ask us to impose sanctions against the Tushers for filing a frivolous or dilatory appeal. (§ 907; Cal. Rules of Court, rule 26(a).) While, as already noted, we believe both sides have filed ridiculously long and confusing briefs, we find no basis for awarding sanctions. The motion is denied.

### *Disposition*

The judgment is affirmed. Respondents' motion for sanctions is denied. Respondents to recover their costs on both appeals.

Phelan, P. J., and Corrigan, J., concurred.