Filed 7/22/14  Ajamian v. Terzian-Feliz CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARGARITA AJAMIAN ET AL.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>SANDRA TERZIAN-FELIZ,<br><br>        Defendant and Respondent. | A137929<br><br>(Marin County<br>Super. Ct. No. CIV 1200640) |

The instant appeal represents the latest legal skirmish between two neighboring landowners.  In two prior appeals, we affirmed the underlying 2007 judgment against Sandra Terzian-Feliz (*Terzian-Feliz v. Ajamian* (Feb. 11, 2010, A119333) [nonpub. opn.]), as well as a post-judgment order requiring her to satisfy an injunction bond.  After succeeding in the trial court and on appeal, Margarita Ajamian and Vartan Ajamian (Ajamians) filed a lawsuit against Terzian-Feliz, alleging, among other things, malicious prosecution.[1]  Terzian-Feliz filed a special motion to strike pursuant to Code of Civil Procedure[2] section 425.16, which the trial court granted in part.  Finding the Ajamians have established a probability of prevailing on the merits of their malicious prosecution claim, we reverse.

---

[1]     The lawsuit also alleged a cause of action for intentional infliction of emotional distress, which was the subject of a separate appeal that has now been dismissed.  (See *Ajamian v. Terzian-Feliz*  (A136352; dismissed Feb. 8, 2013).)

[2]     All further undesignated statutory references are to the Code of Civil Procedure.

1

## I. BACKGROUND

### A.     *Underlying Action*

The underlying action arose as a property dispute between neighboring landowners who were also parties to a failed construction contract. Until June 2005, the Ajamians and Terzian-Feliz enjoyed a mutually friendly and neighborly relationship. When Terzian-Feliz wanted to remodel part of her home, she asked Vartan Ajamian for advice about her plans. Vartan Ajamian was a licensed contractor and the principal of a construction company known as Ajamian Enterprises, Inc. (AEI). He suggested ways in which she could lower her overall costs. She decided to engage AEI in part, because she trusted her friends, the Ajamians. (*Terzian-Feliz v. Ajamian, supra,* A119333.)

On June 3, 2005, Terzian-Feliz entered into a formal construction agreement with AEI to remodel the dining room, kitchen, and exterior decks of her home. When the work started, the AEI workers used a bathroom at Terzian-Feliz' s house as needed. After a few days, she grew concerned that the workers were damaging her carpets. At her request, Vartan Ajamian arranged for a portable toilet for their use. The toilet was placed in a location that required a truck to use Terzian-Feliz's concrete aggregate driveway to access it for regular cleanout. She objected to this placement, fearing that the cleanout truck would damage her driveway. (*Terzian-Feliz v. Ajamian, supra,* A119333.)

On June 13, 2005, she verbally terminated the construction agreement and on June 19, 2005, Terzian-Feliz notified the Ajamians in writing that she was terminating that agreement. Thereafter, on July 11, 2005, Terzian-Feliz filed a complaint against the Ajamians and AEI. She alleged causes of action against the Ajamians and AEI, for among other things, breach of contract, fraud, misappropriation/breach of fiduciary duty and elder financial abuse. She sought a prescriptive easement and an implied easement entitling her to use the Ajamians' driveway, as well as damages, declaratory and injunctive relief, and an order quieting title to an easement. The Ajamians cross-complained, alleging causes of action for, inter alia, breach of contract, quantum meruit, and declaratory relief relating to an express easement. They also sought to quiet title to

2

their own prescriptive easement, to rescind the construction contract, and to obtain other declaratory and injunctive relief. Among their affirmative defenses to Terzian-Feliz's complaint, the Ajamians asserted a bona fide purchaser defense. (*Terzian-Feliz v. Ajamian, supra,* A119333.)

In July 2005, before the trial that resulted in the judgment against her, Terzian-Feliz moved for a preliminary injunction. She sought to preclude the Ajamians from preventing her from using their driveway, over which she asserted an easement. She asserted that it was virtually certain that she would prevail on her easement claim at trial. In December 2005, the trial court granted her a preliminary injunction, contingent on the posting of a $75,000 bond. (§ 529, subd. (a).) In January 2006, Terzian-Feliz filed an undertaking obligating her surety to pay a $75,000 injunction bond to the Ajamians if she could not establish her right to an easement. In June 2006, at Terzian-Feliz's request, the trial court dissolved the preliminary injunction. (*Terzian-Feliz v. Ajamian* (Feb. 21, 2012) A128900 [nonpub. opn.].)

During trial, the Ajamians were granted nonsuit on Terzian-Feliz's causes of action for breach of contract and implied easement. Ultimately, a jury found against Terzian-Feliz and for the Ajamians and AEI on all remaining causes of action. In August 2007, the trial court entered judgment against Terzian-Feliz. Among other things, that judgment rejected her claim to a prescriptive and/or implied easement over the Ajamians' driveway. The judgment also defined the Ajamians' use of their own express easement over Terzian-Feliz's property, granted them a prescriptive easement over her property and found them to have been bona fide purchasers of their property. (*Terzian-Feliz v. Ajamian, supra,* A128900.) We affirmed that August 2007 judgment on appeal in February 2010. (*Terzian-Feliz v. Ajamian, supra,* A119333.) In February 2012, we affirmed the post-judgment order requiring Terzian-Feliz to pay the $75,000 injunction bond. (*Terzian-Feliz v. Ajamian, supra,* A128900.)

## B. *Malicious Prosecution Action*

In February 2012, the Ajamians filed a lawsuit against Terzian-Feliz, alleging causes of action for malicious prosecution and intentional infliction of emotional distress.

Thereafter, Terzian-Feliz filed a special motion to strike pursuant to section 425.16. The trial court bifurcated the proceedings hearing first, Terzian-Feliz's contention that the denial of motions for nonsuit, and a defense summary adjudication motion in the prior action, precluded the Ajamians malicious prosecution claim. After taking the matter under submission, the trial court denied Terzian-Feliz's motion as to the Ajamians first cause of action for malicious prosecution, but granted the motion to strike as to the second cause of action for intentional infliction of emotional distress. Following the second hearing, the trial court found in Terzian-Feliz's favor, ruling that the Ajamians could not succeed on the merits of their malicious prosecution claim because they, as individuals, were not named parties to the Terzian-Feliz's first cause of action for breach of contract against AEI. The trial court further parsed the Ajamians' malicious prosecution cause of action, by striking that portion of their claim relating to Terzian-Feliz's cause of action against them for a prescriptive easement.

The instant appeal followed.

## II. DISCUSSION

### A.    *Applicable Law and Standard of Review*

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted . . . section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.)

A court's consideration of an anti-SLAPP motion involves a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it

4

then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)

In order to establish a probability of prevailing on the claim, "the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*), superseded by statute on other grounds as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547.) "Thus, plaintiffs' burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment." (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768 (*Navellier*).)

We review the trial court's decision to grant or deny an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) In doing so, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) " 'However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley v. Mauro, supra,* at p. 326.)

## B. *Protected Activity*

The Ajamians concede that the primary focus of the instant appeal concerns the second prong of the anti-SLAPP analysis—determining whether they have established a probability of prevailing on their claim. Nevertheless, the Ajamians make a passing claim that Terzian-Feliz's lawsuit against them does not constitute protected activity.

In analyzing a plaintiff's burden under the first prong of the anti-SLAPP analysis, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier, supra,* 29 Cal.4th at p. 89.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted

5

liability—and whether that activity constitutes protected speech or petitioning." (*Id.* at p. 92.)

It is well-established that for purposes of the SLAPP Act, "every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding. [Citation.]" (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215; see also *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735.)

In the instant case, it is clear that the Ajamians claim for malicious prosecution arises out of protected activity. Accordingly, we turn to the true disputed issue, which is whether the Ajamians have sustained their burden of demonstrating a probability of prevailing on the merits of their malicious prosecution claim.

## C.     *Probability of Prevailing*

### 1.     *Section 425.16 Requires a Probability of Prevailing on Any Portion of the Challenged Cause of Action*

The Ajamians contend the trial court erred in parsing their unitary cause of action for malicious prosecution, by striking those portions relating to Terzian-Feliz's causes of action for breach of contract and prescriptive easement. We agree.

"The anti-SLAPP statute authorizes the court to strike a cause of action, but unlike motions to strike under section 436, it cannot be used to strike particular allegations within a cause of action." (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1124; compare § 425.16, subd. (b)(1) ["A cause of action against a person . . . shall be subject to a special motion to strike"] and § 436, subd. (b) [authorizing a court to strike "all or any part of any pleading"]; see *Guessous v. Chrome Hearts, LLC* (2009) 179 Cal.App.4th 1177, 1187 ["section 425.16 applies only to a cause of action, not to a *remedy*"]; *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 162 ["A SLAPP motion must be based on a cause of action, not a prayer for relief" (capitalization omitted)].)

To defeat an anti-SLAPP motion, a plaintiff therefore needs to establish only a probability of prevailing on " '*any part*' " of the challenged cause of action. (*Oasis West*

6

*Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis*); *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 379 (*Burrill*); *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1211–1212 (*Wallace*); *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106 (*Mann*).)  As explained above, the purpose of the anti-SLAPP statute is to prevent meritless litigation designed to chill the exercise of First Amendment rights. (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 463.)  " '[O]nce a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' [Citation.]" (*Oasis, supra*, 51 Cal.4th at p. 820; *Burrill, supra,* 217 Cal.App.4th at p. 379; *Wallace, supra*, 196 Cal.App.4th at pp. 1211-1212; *Mann,supra,* 120 Cal.App.4th at p. 106 ["Thus, a court need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit"].)

In *Oasis,* a real estate development business sued its former attorney for breach of fiduciary duty, professional negligence, and breach of contract when the attorney withdrew from representing the business on a proposed redevelopment project and later joined a community campaign to defeat the same project.  (*Oasis, supra,* 51 Cal.4th at pp. 815-816.)  The trial court denied the attorney's anti-SLAPP motion to strike the business's entire complaint.  (*Id.* at pp. 816-819.)  The Supreme Court affirmed that decision because it found the business had established a probability of prevailing on one of several alleged acts of misconduct.  (*Id.* at pp. 821, 827 (concur. opn. of Kennard, J.).) The *Oasis* court found it unnecessary to address whether the business established a probability of prevailing on any other alleged misdeeds, explaining, "The complaint identifies a number of acts of alleged misconduct and theories of recovery, but for purposes of reviewing the ruling on an anti-SLAPP motion, it is sufficient to focus on just one." (*Id.* at p. 821.)

*Wallace* summarized the Supreme Court's *Oasis* decision: "*Oasis* clearly holds that, where a cause of action (count) is based on protected activity, the entire cause of

action may proceed as long as the plaintiff shows a probability of prevailing on at least *one* of the asserted bases for liability. [¶] . . . Indeed, not only does *Oasis* permit the entirety of the cause of action to go forward, it precludes consideration of the merit of any other claims in the cause of action once a probability of prevailing is demonstrated as to one of them." (*Wallace, supra,* 196 Cal.App.4th at p. 1211.)

Similarly, in *Burrill,* the appellate court applied this rule in a defamation action that alleged the defendant uttered numerous defamatory statements. (*Burrill, supra,* 217 Cal.App.4th at pp. 379, 382.) There, a father made several statements critical of a court-appointed reunification counselor who filed a report that subjected the father to a domestic violence restraining order and significant restrictions on his child visitation rights. (*Id.* at pp. 364-365.) The father made different comments in several online blogs, during a radio interview, and in a flyer he distributed in the counselor's neighborhood. (*Id.* at pp.375-376.) The counselor sued the father for defamation based on those statements and the father brought an anti-SLAPP motion. (*Ibid.*) The trial court denied the motion because it found the counselor had established a probability of prevailing on her claim. (*Id.* at pp. 376-378.) In affirming the trial court ruling, the *Burrill* court applied *Oasis* and held the counselor need only show a probability of prevailing on one of the numerous defamatory statements to defeat the motion. (*Id.* at p. 383.)

Based on these authorities, we conclude that the trial court erred by parsing out the breach of contract and implied easement causes of action. Once the trial court found the Ajamians established some merit to their malicious prosecution cause of action by showing a probability of prevailing on at least part of their claim, the court was required to deny the motion. (*Oasis, supra,* 51 Cal.4th at pp. 820-821; *Burrill, supra,* 217 Cal.App.4th at pp. 379, 383; *Wallace, supra,* 196 Cal.App.4th at p. 1211; *Mann, supra,* 120 Cal.App.4th at p. 106.) In partially denying Terzian-Feliz's anti-SLAPP motion, the trial court determined that the Ajamians demonstrated a probability of prevailing on their malicious prosecution claim vis-à-vis Terzian-Feliz's causes of action for fraud, breach of fiduciary duty, financial elder abuse, and implied easement. This ruling reflects the Ajamians had established that their cause of action has some merit and, as such, the trial

8

court was required to allow the *entire cause of action* to stand.  (*Oasis, supra,* 51 Cal.4th at pp. 820-821; *Burrill, supra,* 217 Cal.App.4th at pp. 379, 383; *Wallace, supra,* 196 Cal.App.4th at p. 1211; *Mann, supra,* 120 Cal.App.4th at p. 106.)  Terzian-Feliz disagrees with this conclusion, but the authorities she cites either do not support her position or are readily distinguishable.

*Taus v. Loftus* (2007) 40 Cal.4th 683 (*Taus*), is the principal authority Terzian-Feliz cites to support her contention that a court must separately rule on each protected activity alleged in a single cause of action, and must strike any allegation on which the plaintiff fails to establish a probability of prevailing.  In *Taus,* the plaintiff sued the defendants on four causes of action based on numerous statements they made about the plaintiff in articles and lectures on suppressed memories of childhood abuse.  (*Id.* at pp. 689, 701-702.)  The trial court granted the defendants' anti-SLAPP motion in part and denied it in part by striking two causes of action as to some defendants and three causes of action as to other defendants.  (*Id.* at p. 702.)  The Court of Appeal affirmed the trial court's ruling striking some of the plaintiff's causes of action, but reversed the ruling on portions of the causes of action the trial court allowed to remain.  Specifically, the Court of Appeal concluded the trial court should have struck some of the statements the plaintiff alleged as the basis for the remaining causes of action even though the appellate court allowed those claims to remain based solely on four of the many statements the plaintiff alleged.  (*Id.* at pp. 703-704, 711.)  The Supreme Court granted the defendants' petition for review to decide only whether the four statements the Court of Appeal allowed to remain were protected activities and whether the plaintiff could establish a probability of prevailing on any claim based on those statements.  (*Id.* at pp. 703, 711-712, 714-715.)  The Supreme Court concluded that all four statements were protected activities, but the plaintiff established a probability of prevailing on only one of them. (*Id.* at p. 742.)

Accordingly, the *Taus* court struck all but one portion of one cause of action under the anti-SLAPP statute, but it did so without addressing whether the statute authorized a court to strike a portion of a cause of action or whether the statute required a ruling on

9

every protected act alleged in the challenged cause of action. (*Taus, supra,* 40 Cal.4th at pp. 712-714, 742.) " ' "It is axiomatic that cases are not authority for propositions not considered." ' [Citations.]" (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 127.) Moreover, *Oasis* was decided four years after *Taus* and it expressly held a cause of action may not be stricken if the plaintiff establishes a probability of prevailing on any portion of the cause of action. (*Oasis, supra,* 51 Cal.4th at pp. 820-821.) Although *Oasis* did not expressly address *Taus,* subsequent cases have held that *Oasis* implicitly overruled *Taus.* (*Burrill, supra,* 217 Cal.App.4th at p. 380; *Wallace, supra,* 196 Cal.App.4th at p. 1211; see *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 787, 794 (dis. opn. of Richli, J.) (*City of Colton*).) We are bound to follow *Oasis* as the most recent Supreme Court precedent on this issue. (*Burrill, supra*, 217 Cal.App.4th at p. 382.)

Terzian-Feliz also relies on *City of Colton, supra,* 206 Cal.App.4th 751. Although this case allowed a trial court to strike portions of a cause of action under the anti-SLAPP statute, it is readily distinguishable. *Colton* involved a single or mixed cause of action based on both protected and unprotected activity. *Colton* struck the portions of the causes of action based on protected activity because the plaintiffs failed to establish a probability of prevailing, but allowed parts of the causes of action based on unprotected activity to remain because the plaintiffs showed a probability of prevailing. (*Colton, supra,* 206 Cal.App.4th at pp. 772-773.) Accordingly, the plaintiffs in *City of Colton* failed to meet its burden under the second prong of the anti-SLAPP analysis because they failed to show a probability of prevailing on any protected activity. We decline to follow *City of Colton* because it relied on *Taus* without explaining why *Oasis* did not apply. Indeed, *Colton* failed to even acknowledge *Oasis* (*Colton, supra,* 206 Cal.App.4th at pp. 773-774).

The anti-SLAPP statute is designed to prevent plaintiffs from filing meritless claims to chill protected speech. Once the complainant has shown the cause of action has merit, the rationale for quickly disposing of meritless claims no longer applies. As *Oasis* notes, a probability of prevailing on any part of a cause of action will defeat an anti-

10

SLAPP attack. (*Oasis, supra,* 51 Cal.4th at p. 820.) Here, as explained below, we conclude the Ajamians established a probability of prevailing on at least some of the causes of action in the underlying case on which the Ajamians have based their malicious prosecution action, and thus *City of Colton* does not apply.

### 2. *The Ajamians Have Satisfied Their Burden*

To meet their burden in the second stage of the anti-SLAPP analysis, plaintiffs must establish a probability of prevailing on the challenged cause of action by " 'demonstrat[ing] that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson, supra,* 28 Cal.4th at p. 821.) "For purposes of this inquiry, 'the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.] In making this assessment it is 'the court's responsibility . . . to accept as true the evidence favorable to the plaintiff . . . .' [Citation.] The plaintiff need only establish that his or her claim has 'minimal merit' [citation] to avoid being stricken as a SLAPP. [Citations.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*); *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1147.)

The sole cause of action at issue here is the Ajamians's malicious prosecution claim. To prevail on a malicious prosecution claim, a plaintiff must plead and prove that the prior action "(1) was commenced by or the direction of the defendant and was pursued to a legal determination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup, supra,* 39 Cal.4th at p. 292.) We focus on the probable cause element.[3]

---

[3]     Terzian-Feliz did not contest the malice element in the trial court and does not raise it on appeal. Accordingly, to the extent any claim of absence of malice could be

"The question of probable cause is 'whether, as an objective matter, the prior action was legally tenable or not.' " (*Soukup, supra,* 39 Cal.4th at p. 292.) "To make a prima facie case of a lack of probable cause in response to the anti-SLAPP motion, [the plaintiff] must submit substantial evidence showing no reasonable attorney would have thought the [prior] action was tenable in light of the facts known . . . at the time the suit was filed [citations], or that [the plaintiffs] continued pursuing the lawsuit after they had discovered the action lacked probable cause." (*Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1449 (*Mendoza*), citing *Zamos v. Stroud* (2004) 32 Cal.4th 958, 966-970.) " 'Only those actions that " 'any reasonable attorney would agree [are] totally and completely without merit' " may form the basis for a malicious prosecution suit.' " (*Mendoza, supra*, 194 Cal.App.4th at p. 1449.) "[A]n action for malicious prosecution lies when but one of alternate theories of recovery is maliciously asserted . . . ." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 57, fn. 5.)

Whether a reasonable attorney would have thought the claim legally tenable is a legal issue. (*Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 333.) This legal question is to be determined on the basis of whether as an objective matter, the prior action was legally tenable. (*Ibid.*)

The trial court granted nonsuit on the breach of contract and implied easement causes of action asserted in the underlying action. The granting of the nonsuit establishes only that Terzian-Feliz could not marshal the necessary evidence to prevail on her contract and implied easement theories, but proof of lack of probable cause requires more. (See *Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 320.)

a.      Breach of Contract

Terzian-Feliz argues the Ajamians could not establish a probability of prevailing on the breach of contract cause of action because they were not named defendants with respect to that cause of action. We disagree. Although the complaint purports to name only AEI as the defendant in the title of the breach of contract cause of action, the

raised, this argument is forfeited on appeal. (See *Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1406.)

12

allegations contained within this cause of action clearly refer to the Ajamians individually, as well as doing business as AEI. Specifically, the breach of contract cause of action alleges that AEI, "acting by and through [d]efendants Vartan and Margarita Ajamian, breached the contract . . . by conducting its improvement duties on [Terzian-Feliz's] home *in accordance with the conflicting, personal, adverse interests in the remodel and sale of Vartan and Margarita Ajamian's own adjacent home, in conflict with [d]efendant [AEI] and [d]efendants Vartan and Margarita Ajamian's duties to carry out their work in the best interests and welfare of [Terzian-Feliz] and her property pursuant to said home improvement contract.*" (Italics added.)

In the trial court, Terzian-Feliz argued that she presented evidence of the Ajamians's breach of the implied covenant of good faith and fair dealing by placing the portable toilet in the location that they did, reasoning that a different placement might have impeded the sale of their home. The trial court granted the Ajamians' motion for nonsuit on the breach of contract cause of action, finding it was based on the disagreement about the placement of the portable toilet, which did not rise to the level of a breach of the implied covenant of good faith and fair dealing. (*Terzian-Feliz v. Ajamian, supra,* A119333.)

On appeal, we held the nonsuit motion was properly granted, explaining: "The gravamen of the breach of contract claim in her complaint is that the Ajamians subjugated her interests to their own by initially placing the portable toilet in a location that displeased her. She contends, in essence, that the Ajamians' decision to place the portable toilet in a location that might be more desirable to them as sellers of their own home was a conflict of interest constituting a breach of contract to remodel her home. In so doing, she confuses the duty required by the covenant of good faith and fair dealing and a fiduciary duty. The two duties differ; the implied covenant does not create a fiduciary duty, but merely affords a basis for redress of a breach of contract. (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 31.) Terzian-Feliz would impute to the Ajamians obligations that were not contemplated by the contract. We cannot do so. [Citation.]" (*Terzian-Feliz v. Ajamian, supra,* A119333.)

13

Whether a reasonable attorney would have thought Terzian-Feliz's breach of contract claim legally tenable is a legal issue. (*Franklin Mint Co. v. Mannat, Phelps & Phillips, LLP, supra,* 184 Cal.App.4th 313, 333.) This legal question is to be determined on the basis of whether as an objective matter, the prior action was legally tenable. (*Ibid.*) Objectively speaking, no reasonable attorney would have thought that a less than desirable placement of a portable toilet constituted a legally tenable basis for pursuing a breach of contract claim. It is said that "[t]he malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will . . . . In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action including reasonable attorney's fees [citations], compensation for injury to his reputation or impairment of his social and business standing in the community [citations], and for mental or emotional distress." (*Bertero v. National General Corp.*, *supra*, 13 Cal.3d 43, 50-51, fn. omitted.) As well, "[t]he judicial process is adversely affected by a maliciously prosecuted cause not only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals ' . . . as instruments with which to maliciously injure their fellow men.' [Citation.]" (*Id.* at p. 51.)

Terzian-Feliz attempts to insulate herself from tort liability by claiming that any harm caused by the breach of contract claim was directed at AEI, not the Ajamians. The record, however, belies this claim. As discussed, Terzian-Feliz was upset that the Ajamians put their own needs above hers. (*Terzian-Feliz v. Ajamian, supra,* A119333.) The breach of contract cause of action alleged wrongdoing by the Ajamians in their corporate, as well as individual capacities. Accordingly, we conclude the Ajamians established a prima facie case of lack of probable cause with respect to the breach of contract cause of action.

14

### b.    Implied Easement

Even disregarding the breach of contract cause of action, the Ajamians established a prima facie case of lack of probable cause with respect to the implied easement cause of action.  "The crucial issue in determining lack of probable cause is the information possessed by the attorney and/or client at the time the suit is filed, and throughout the lawsuit."  (*Roger Cleveland Golf Co., Inc. v. Krane & Smith, APC* (2014) 225 Cal.App.4th 660, 685-687.)

As we previously explained in *Terzian-Feliz v. Ajamian, supra,* A119333, the law of implied easements is clear.  An easement will be implied if three conditions are shown to have existed at the time of conveyance of the property.  First, the property owner conveyed or transferred a portion of the property to another.  Second, the owner's *prior use* of the property was such that the parties must have intended or believed that this use would continue.  The existing use must either have been known to the grantor and grantee, or that existing use must have been so obviously and apparently permanent that these parties should have known of its use. Third, the easement must have been reasonably necessary to the use and benefit of the quasi-dominant tenement.  (*Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 141.)  The purpose of the doctrine of implied easements is to give effect to the "*actual intent*" of the parties, based on the totality of the circumstances.  (*Ibid.*)  An implied easement requires clear evidence that it was intended by the parties.  (*Id.* at pp. 141-143.)

It is undisputed that the properties owned by Terzian-Feliz and the Ajamians were once under common ownership.  In 1954, the prior owners, Adalbert and Marie Louise von Rotz, subdivided one parcel in a manner that created the two lots—40 Steven Court (No. 40) and 60 Steven Court (No. 60).  When granting the Ajamians' motion for nonsuit on Terzian-Feliz's implied easement cause of action, the trial court found that she offered no evidence of prior use.  In her prior appeal challenging this ruling, Terzian-Feliz, citing the topography of the area, argued that the von Rotzes "must have" used the No. 40 driveway to access No. 60 and "must have" intended the owners of No. 60 to continue using the No. 40 driveway after the two lots were split from unitary ownership.

15

As we previously explained, this argument is not evidence, but mere speculation about what *might* have happened in the 1950's before the subdivision occurred. (See *Markowitz v. Fidelity Nat. Title Co.* (2005) 142 Cal.App.4th 508, 520; *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1209.) Speculation cannot support an inference of prior use. This is particularly so because of the need for *clear* evidence of the von Rotzes's intent to create an implied easement. (See *Tusher v. Gabrielsen, supra,* 68 Cal.App.4th at pp. 141-143.) (*Terzian-Feliz v. Ajamian, supra,* A119333.)

Terzian-Feliz's only evidence related to the use of the No. 40 driveway to access No. 60 that occurred *after* the two lots were subdivided. She offered *no* evidence that the von Rotzes needed or used the No. 40 driveway. In fact, there was no evidence that this driveway even *existed* when the two lots were subdivided. In the face of this complete dearth of evidence, Terzian-Feliz's claim of implied easement was not legally tenable. (*Terzian-Feliz v. Ajamian, supra,* A119333.)

## III. DISPOSITION

The order granting the special motion to strike is reversed.

_____

REARDON, J.

We concur:

_____

RUVOLO, P. J.

_____

RIVERA, J.