Filed 5/7/15  Zawadzki v. Korman CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ALEX BRANT-ZAWADZKI,<br><br>            Plaintiff and Appellant,<br><br>v.<br><br>BOB KORMAN et al.,<br><br>            Defendants and Respondents. | A141451<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-11-516255) |

Plaintiff Alex Brant-Zawadzki brought this action against defendants Bob Korman and Nancy Ryti—respectively, the landlord and owner of his apartment—in connection with a condition in the basement of his building whereby the equipment of a third party, Comcast, drew electricity from plaintiff's utility meter.  The trial court granted defendants' motion for judgment on the pleadings as to plaintiff's claim for civil conspiracy.  Six of plaintiff's claims proceeded to a bench trial: violation of Civil Code sections 1940.9 and 1950.5, conversion/trespass to chattels, fraud and negligent misrepresentation, and breach of contract.  After the close of plaintiff's evidence, the trial court granted defendants' motion for nonsuit and, subsequently, awarded them attorney fees.  On appeal, plaintiff argues the trial court erred because a motion for nonsuit is improper in a bench trial.  Further, to the extent defendants' motion can be construed as a motion for judgment—which would have been proper in this context—plaintiff argues the trial court's decision is not supported by substantial evidence.  Plaintiff also contends the trial court erred by dismissing his claim for civil conspiracy and granting defendants'

motion for attorney fees.  We affirm the judgment, but remand for adjustment of the attorney fee award.

## I.  BACKGROUND

This case arises out of plaintiff's tenancy in a building in San Francisco's Richmond District.  In 2004, several years before plaintiff took up residence there, the building's owner, Nancy Ryti, entered into a site access agreement with Comcast of California III, Inc. (Comcast).  The agreement granted Comcast a nonexclusive right to use space and utility connections in the building's basement for the purpose of providing connectivity to Comcast's network.  Under the agreement, Ryti was to make available to Comcast up to two 20-amp circuits so Comcast could power its equipment.  Comcast agreed to reimburse Ryti for the cost of the electrical current used at a rate of $95 per circuit.  Comcast also agreed to pay Ryti a $9,800 license fee.  Korman is listed as Ryti's contact for notice.

Plaintiff leased an apartment in the building from February 15, 2007 through May 2009.  The lease agreement was signed by plaintiff and Ryti, as well as Bob Korman, who is identified as "Landlord."  The lease provides plaintiff "shall be responsible for the payment of utilities and services," but it makes no mention of the site access agreement with Comcast.  Plaintiff testified he did not learn of the agreement until he talked to a Comcast customer service representative in May or June 2009.

Plaintiff initially shared his utility bill with the building's two other tenants.  About 40 percent of the bill was allocated to plaintiff, and the other two tenants were responsible for the remaining 60 percent.  In February or March 2008, one of the tenants moved out, and plaintiff split the building's utilities evenly with the other tenant.  The other tenant moved out in August 2008.  Plaintiff was then responsible for 100 percent of the utilities, and he had the accounts transferred into his name.  Shortly thereafter, plaintiff learned there was an arrearage of thousands of dollars on the account.

Plaintiff testified he first learned he was being billed for electricity used by the Comcast equipment on or around May 22, 2009.  On that day, he was talking with his former neighbor about how Korman had been performing repairs or renovations in the

2

apartment below. Plaintiff joked Korman should pay for some of the electric bill because of the power tools he had been using. Plaintiff testified: "I had been able to hear these loud machines buzzing in the basement since I moved in, so suddenly a light went off in my head. I said, hey, I wonder where those two giant machines get their power from, because I had been down there maybe once or twice, and didn't get a great look around and didn't . . . remember seeing anything that—you know, I got suspicious." Plaintiff then went to the basement to investigate, and after tracing the conduits and experimenting with the breakers, he discovered the Comcast machines were drawing power from his meter. Plaintiff asked Korman about the situation later that day. Korman claimed he did not know if the machines were Comcast's and was evasive about Comcast's use of electricity.

Plaintiff filed an unverified complaint against defendants in September 2009. A year later, the case was dismissed after the court had set several order to show cause hearings concerning plaintiff's failure to file a proof of service and failure to appear. In December 2011, plaintiff filed another unverified complaint against defendants. After answering the complaint, defendants filed a motion for judgment on the pleadings. The motion was granted in part and denied in part. Among other things, the court dismissed plaintiff's claim for conspiracy without leave to amend on the ground defendants "cannot conspire with self [sic]." Plaintiff subsequently filed an amended complaint.

The following claims were adjudicated to trial: violation of Civil Code sections 1940.9 and 1950.5, conversion/trespass to chattels, fraud and negligent misrepresentation, and breach of contract. A bench trial commenced on December 9, 2013. On the following day, after plaintiff rested, defendants moved for nonsuit, arguing (1) plaintiff's claims were barred by the applicable statutes of limitations, and (2) plaintiff failed to prove as a matter of law any of the alleged conduct was a legal cause of damage, and plaintiff could not demonstrate the amount of any alleged loss. The court took a brief recess and then granted the motion. It is unclear from the record on what grounds the motion was granted. Although defendants requested a statement of decision prior to trial,

the court declined to issue one.  Judgment was entered for defendants on January 30, 2014.

Defendants subsequently moved for attorney fees pursuant to the San Francisco Rent Ordinance, specifically section 37.9 of the San Francisco Administrative Code.  The motion was granted in part, and the court awarded attorney fees in the amount of $37,050.

## II.  DISCUSSION

### A.  *The Motion for Nonsuit*

Plaintiff argues the judgment must be reversed because the trial court erred in granting a motion for nonsuit.  As plaintiff points out, the Legislature has abolished motions for nonsuit where, as here, a case is tried before the court without a jury.  (*Estate of Pack* (1965) 233 Cal.App.2d 74, 77.)  Pursuant to Code of Civil Procedure section 581c, subdivision (a), a defendant may move for a judgment of nonsuit "[o]nly after . . . the plaintiff has completed his or her opening statement, or after the presentation of his or her evidence in a *trial by jury*."  (Italics added.)

The trial court's error is not fatal, however, because defendants' motion for nonsuit may be treated as a motion for judgment under Code of Civil Procedure section 631.8.  In relevant part, the statute states:  "After a party has completed his presentation of evidence in a trial by the court, the other party . . . may move for a judgment.  The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision as provided in Sections 632 and 634, or may decline to render any judgment until the close of all the evidence."  (Code Civ. Proc., § 631.8, subd. (a).)  The statute "was obviously intended as a substitute procedure available to a defendant at the close of plaintiff's evidence [in a bench trial]."  (*East-West Capital Corp. v. Khourie* (1970) 10 Cal.App.3d 553, 556 (*East-West*).)  Thus, "if the requirements of section 631.8 [a]re otherwise met, a motion for and judgment of nonsuit m[ay] be treated as a motion and judgment made under that section."  (*Ibid.*)

4

Plaintiff argues even if we construe defendants' motion for nonsuit as a motion for judgment, reversal is warranted because the court failed to issue a statement of decision. According to plaintiff, a statement of decision is necessary whenever a trial court grants a motion for judgment pursuant to Code of Civil Procedure section 631.8. "It is clear, however, that no statement is required unless timely requested by a party." (*Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 140, fn. 10.) Section 631.8 requires the court to "make a statement of decision as provided in Sections 632 and 634," and section 632 conditions the issuance of such a statement "upon the request of any party appearing at trial."

Here, plaintiff waived his right to a statement of decision by failing to request one below. Contrary to plaintiff's assertion, *East-West* does not compel a different conclusion. In that case, the court rejected the defendant's contention that a notice of appeal may reasonably be deemed a waiver of findings, which were then required in place of a statement of decision. (*East-West, supra*, 10 Cal.App.3d at p. 558.) The court reasoned Code of Civil Procedure section 632 prescribed the exclusive means of waiver. (*East-West*, at p. 558.) At the time of the trial in that case, section 632 stated findings could be waived by written or oral consent or failure to appear. The statute has since been "drastically revised." (*East-West*, at p. 556, fn. 1.) It no longer requires the trial court to issue findings or a statement of decision absent waiver. Instead, as discussed above, a statement of decision is now only required when requested by a party.

Finally, plaintiff asserts a statement of decision was required because defendants requested one prior to trial. As plaintiff points out, a trial court's failure to issue a statement of decision upon a timely request of a party is generally reversible error. (E.g., *Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1129.) Courts have remanded in such cases because a statement of decision adequately explaining the factual and legal basis for the trial court's decision can greatly reduce the burden placed on the parties and court on appeal. (*Id.* at p. 1130; *Social Service Union v. County of Monterey* (1989) 208 Cal.App.3d 676, 681.) However, we are aware of no authority holding an appellant who declines to request a statement of decision may later

5

challenge a trial court's failure to issue one. Accordingly, we see no reason why the normal rules of waiver should not apply. (Cf. *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134 [party forfeits its right to challenge omissions or ambiguities in a statement of decision where it fails to timely object to those deficiencies below].) Here, plaintiff did not request a statement of decision or make any proposals as to its content. Nor did he object to the trial court's failure to provide one. Even if plaintiff had objected, it is unclear he would have had standing to do so in light of his failure to request a statement of decision. Moreover, as we find substantial evidence supports the judgment, remanding the case for further proceedings would be a waste of judicial resources. (See section II.B., *post*.)

Accordingly, we decline to reverse because defendants' motion for nonsuit was deficient in form or because the trial court failed to issue a statement of decision.

## B. *Substantial Evidence Review*

As the trial court did not issue a statement of decision, we review the entire record to determine whether the judgment is supported by substantial evidence. (See *Miramar Hotel Corp. v. Frank B. Hall & Co.*, *supra*, 163 Cal.App.3d at p. 1130.) On substantial evidence review, we "must view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the trial court." (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336.) "We may not substitute our view of the correct findings for those of the trial court; rather, we must accept any reasonable interpretation of the evidence which supports the trial court's decision." (*Ibid.*) "Substantial evidence, of course, is not synonymous with 'any' evidence." (*Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864, 871.) Rather, it is "evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) The focus is on the quality, not the quantity, of the evidence. (*Ibid.*) As set forth below, we find substantial evidence supports the judgment as to each of the claims asserted at trial.

6

**1.** *Civil Code Section 1940.9, Conversion/Trespass to Chattels, Fraud and Negligent Misrepresentation, and Breach of Contract*

We find substantial evidence supports the judgment as to plaintiff's claims for violation of Civil Code section 1940.9, conversion/trespass to chattels, fraud and negligent misrepresentation, and breach of contract because plaintiff failed to prove his damages. All of these claims are predicated on the theory defendants damaged plaintiff by failing to provide separately metered electricity and inducing him to pay for Comcast's electricity consumption. Plaintiff had the burden to prove damages as to each claim. (*Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 268.) He need not have proved his damages with exactness. (*Schroeder v. Auto Driveway Co.* (1974) 11 Cal.3d 908, 921.) But "[w]hatever the proper measure of damages may be, in a given case, . . . recovery . . . is still subject to the fundamental rule that damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." (*Frustuck v. City of Fairfax* (1963) 212 Cal.App.2d 345, 367–368.)

Here, there is evidence plaintiff was responsible for paying some portion of the building's utilities during his tenancy. But it is unclear how much plaintiff was charged for utilities during this period. Plaintiff initially testified he paid hundreds of dollars per month for utilities. When asked if he could be more specific, plaintiff responded it depended on the time of year, but his monthly utility bill was approximately $400 from the beginning of 2008 through when he moved out in May 2009. It is unclear how much the bill varied and whether this amount was charged to plaintiff alone or whether it was split among the other tenants who lived in the building during some of this period. There is also no indication how much plaintiff paid for utilities prior to 2008.

More importantly, plaintiff offered no evidence concerning what portion of his utility bill was attributable to Comcast's electricity consumption. Without such evidence, there is no way to assess plaintiff's total damages, as these claims are predicated on the theory he was paying for Comcast's electricity. Plaintiff did testify the monthly utility bill at his current apartment is $40 to $50 per month, as opposed to the $400 per month he previously paid. However, the trial court could have reasonably concluded such a

comparison proved nothing, especially since there is no indication the two apartments are remotely similar. In fact, plaintiff testified his new apartment is significantly smaller than his old one. Plaintiff also argues defendants' site access agreement with Comcast provided for a minimum reimbursement for two electrical circuits at $95 per circuit each month in exchange for Comcast's use of electricity, suggesting Comcast used at least $190 of electricity per month. Nevertheless, it is entirely possible the Comcast machines used less electricity during the relevant period, and plaintiff offered no evidence suggesting otherwise.

Likewise, plaintiff's evidence concerning the arrearage on his utility account was far from decisive. Though plaintiff testified the arrearage was $4,000 "at its worst," he did not specify whether it was attributable to the additional electricity consumed by Comcast. Nor did plaintiff testify that he paid it. Rather he merely stated he was "obligated" to pay the arrearage. Whether plaintiff fulfilled that obligation remains an open question.

Plaintiff also asserts he was entitled to damages for emotional distress in connection with his claims for conversion, trespass to chattels, and fraud. He argues he presented sufficient evidence to support this claim because he testified he was "shocked" when he discovered defendants' arrangement with Comcast, and the arrangement made him feel "upset" and "helpless." "[D]amages for emotional distress arising out of acts which invade an interest protected by established tort law are recoverable only if the claimed emotional distress naturally ensues from the acts complained of" and "where there is some means for assuring the validity of the claim." (*Merenda v. Superior Court* (1992) 3 Cal.App.4th 1, 6, 8, disapproved on another ground in *Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1053.) In this case, the trial court could have reasonably concluded plaintiff's claims for emotional distress were barred because he failed to show his utility bill was affected in any significant way by defendants' arrangement with Comcast. As there is no indication the arrangement resulted in a loss of personal property, it would be anomalous to conclude it somehow caused plaintiff emotional distress.

8

## 2. *Civil Code Section 1950.5*

We address plaintiff's claim for violation of Civil Code section 1950.5 separately because, unlike his other claims, it does not arise out of Comcast's electricity consumption. In relevant part, section 1950.5, provides: "No later than 21 calendar days after the tenant has vacated the premises, . . . the landlord shall furnish the tenant . . . an itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security, and shall return any remaining portion of the security to the tenant." (*Id.*, subd. (g)(1).) Plaintiff asserts defendants violated the statute because they refused to return his security deposit of $5,000. Plaintiff did not, however, offer any evidence showing defendant failed to provide a statement describing the disposition of his security deposit or that any portion of the security deposit was wrongfully withheld. Moreover, plaintiff testified he planned on terminating his lease eight to nine months early, and there is also evidence he was assessed an $8,250 early termination penalty. Accordingly, there is substantial evidence plaintiff failed to meet his burden to prove a violation of section 1950.5.

## C. *Civil Conspiracy*

Plaintiff also challenges the trial court's order granting defendants' motion for judgment on the pleadings as to plaintiff's claim for civil conspiracy. Plaintiff had alleged Korman and Ryti conspired with each other to defraud him. The trial court dismissed the claim on the ground one "cannot conspire with self [*sic*]," apparently because it found Korman was Ryti's agent, and a principal is legally incapable of conspiring with an agent. Plaintiff argues the trial court erred because he alleged Korman and Ryti were not agent and principal, but "were acting in furtherance of their own financial gain in conspiring together." We need not reach the issue since, as set forth above, plaintiff failed to prove any of his tort claims. "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511.) "No conspiracy, however atrocious, gives rise to any civil

9

cause of action unless an underlying civil wrong, resulting in damage, is alleged and proven." (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 792.) Because plaintiff failed to prevail on any of his tort claims, he cannot possibly prove a claim for civil conspiracy.

**D.** *Attorney Fees*

Following trial, defendants moved for attorney fees in the amount of $73,500, pursuant to the San Francisco Rent Ordinance, specifically section 37.9 of the San Francisco Administrative Code. The trial court granted the motion and awarded defendants fees incurred, up to and including March 29, 2013, in the amount of $37,050. Plaintiff asserts this award was improper because the parties' lease agreement states each party shall bear their own attorney fees, and even if attorney fees were warranted, they should have been limited to those incurred through December 2012. We conclude defendants were entitled to attorney fees, but agree with plaintiff those fees should have been limited.

San Francisco Administrative Code section 37.9 pertains to tenant evictions. Subdivision (f) provides for various penalties in cases where a landlord wrongfully endeavors to recover possession of a rental unit, including treble damages and damages for mental or emotional distress. Most importantly for the purposes of this case, subdivision (f) also states the prevailing party in such actions shall be entitled to reasonable attorney fees and costs. In contrast, the parties' lease agreement states each party shall bear their own attorney fees: "In any action or proceeding involving a dispute between Owner, Tenant and/or Broker arising out of the execution of this agreement, or to collect commissions, or to enforce the terms and conditions of this agreement, or to recover possession of the premises from Tenant, each party to such an action at law is to bear her/his own attorney's fees & court costs."

The pertinent question is whether the San Francisco Rent Ordinance or the lease controls. Under Civil Code section 3513, "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Thus, statutory rights established for a public

10

purpose are unwaivable.  (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 100.)  "Whether a particular term violates public policy by seeking to waive a statutory right or remedy established ' "for a public reason" ' is a question that necessarily entails our discernment of legislative intent."  (*Bickel v. Sunrise Assisted Living* (2012) 206 Cal.App.4th 1, 9.)  The issue of whether the waiver of statutory rights violated public policy presents a legal question we review de novo.  (*Ibid.*)

We discussed the public purpose of the treble damage provision of San Francisco Administrative Code section 37.9, subdivision (f) in *Kelly v. Yee* (1989) 213 Cal.App.3d 336, 341, stating:  "[L]awsuits over wrongful evictions are likely to involve small amounts of money that may not justify the costs of litigation—especially in the case of suits brought by the very type of tenant the ordinance is especially intended to protect: 'senior citizens, persons on fixed incomes and low and moderate income households.' [Citation.]  If civil remedies in aid of these tenants are to be meaningful, they must provide sufficient financial incentive to justify bringing suit.  The award of treble damages very clearly serves such a purpose."  We conclude the same reasoning applies to the attorney fee provision of section 37.9, subdivision (f).  Although the purpose of the ordinance is to encourage meritorious suits by tenants, and in this case the landlord is the prevailing party moving for attorney fees, Civil Code section 1717 requires courts to construe contractual attorney fees provisions as reciprocal.  Thus, we cannot construe the lease as merely waiving defendants' statutory right to attorney fees.

For these reasons, we find section 37.9 of the San Francisco Administrative Code grants defendants, as prevailing parties, an unwaivable right to seek attorney fees in connection with plaintiff's claim for wrongful recovery of his rental unit.  That claim was dismissed on December 20, 2012, but the trial court awarded defendants attorney fees incurred through March 29, 2013.  We agree with plaintiff this award was error.[1]  (Cf.

---

[1] In his reply brief, plaintiff claims he "does not challenge the reasonableness of the *amount* of the attorney fee award," but the propriety of awarding attorney fees at all. But his opening brief states "the attorney fee award should have been limited to the fees

11

*Santisas v. Goodin* (1998) 17 Cal.4th 599, 615 ["If an action asserts both contract and tort or other noncontract claims, [Civil Code] section 1717 applies only to attorney fees incurred to litigate the contract claims."].)

Defendants' arguments on this point are unpersuasive. Defendants suggest they were entitled to all attorney fees incurred in this action under Code of Civil Procedure section 1038, which allows for defense fees in civil proceedings under the Government Claims Act (Gov. Code, § 810 et seq.) where "the proceeding was not brought in good faith and with reasonable cause." (Code Civ. Proc., § 1038, subd. (a).) Defendants did not move, however, for attorney fees under this provision, and the trial court did not make any findings regarding plaintiff's good faith. We decline to do so now, especially since defendants have failed to offer any coherent explanation as to why such a finding is warranted. Moreover, defendants' contention that plaintiff waived the issue by failing to cite to the record or legal authority is belied by plaintiff's opening brief.

In sum, we find defendants are entitled to attorney fees incurred through December 20, 2012, in connection with plaintiff's claim for violation of San Francisco's rent ordinance. We also find the trial court erred in awarding attorney fees incurred after that claim was dismissed. We reverse the attorney fee award and remand for determination of the appropriate amount. The trial court's award shall be limited to attorney fees reasonably incurred in connection with the defense of plaintiff's claim for violation of San Francisco Administrative Code section 37.9.

## III. DISPOSITION

The judgment is affirmed. We reverse and remand the trial court's award of attorney fees.

---

incurred up to the court's order granting Respondents' motion for judgment on the pleadings."

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.